UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Diamin Bethea,

Plaintiff,

-against-

Winfield Security Corporation,

Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  12/14/2023

23 Civ. 922 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiff, Diamin Bethea, brings pregnancy-discrimination and retaliation claims against her employer, Winfield Security Corporation ("Winfield"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); the New York State Human Rights Law, New York Executive Law § 296 *et seq.* ("NYSHRL"); and the New York City Human Rights Law, New York City Administrative Code § 8-101 *et seq.* ("NYCHRL").

Before the Court is Winfield's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  Def. Mem., ECF No. 36.  For the reasons stated below, Winfield's motion is GRANTED in part and DENIED in part.

**BACKGROUND**

I.      **Facts**[1]

Winfield hired Bethea as a security guard in March 2022, and she began working at a mental health shelter—a "tougher than normal" assignment—in August 2022.  Compl. ¶ 11–13.  During Bethea's tenure there, she was assaulted by a patient in an elevator, and there was a stabbing on the premises.  *Id.* ¶¶ 22–23.

In October 2022, Bethea "communicated to her supervisor" that she was pregnant and

---

[1] The following facts are taken from the complaint and are presumed to be true for the purposes of considering the motion for judgment on the pleadings.  *Patel v. Contemp. Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001).

requested a transfer.  *Id.* ¶ 15.  Bethea also requested that her two weekly days off be scheduled consecutively so that she could attend medical appointments.  *Id.* ¶ 18.

Bethea alleges that "approximately 24 [to] 32 hours" after she asked for the second accommodation, Winfield's "dispatch"—a supervisory role—deleted Bethea from the work schedule. *Id.* ¶¶ 20–21.  As a result, she "lost a day off and a workday as 'off the schedule.'"  *Id.* ¶ 21.

On December 28, 2022, Bethea met in person with her direct supervisor and a human resources representative, whom Bethea also labels a supervisor.  *Id.* ¶¶ 21, 24.  At the meeting, both indicated that they knew Bethea was pregnant, agreed that she should receive consecutive days off, and affirmed that the dispatcher "had acted improperly."  *Id.* ¶¶ 25–27.  They also "restored her" to the schedule.  *Id.* ¶ 21.  Although Bethea "request[ed] a discussion on the subject of transfer and light work," the supervisors "did not discuss" the two topics during the meeting.  *Id.* ¶ 28.

## II.   Procedural History

Bethea initiated this action on February 3, 2023, bringing claims under Title VII, the NYSHRL, and the NYCHRL.  On February 21, 2023, Bethea moved for a temporary restraining order that would direct Winfield to immediately transfer her to a "lighter assignment."  ECF Nos. 8– 9.  She attached two text messages: a December 2022 exchange with "Louis," and a February 2023 exchange with "Carter," her supervisor.  ECF Nos. 9-3, 9-4, *see* ECF No. 9 at ¶¶ 8–10.  Attached to Winfield's response papers were affidavits from Bethea's supervisors Melvin Harris (an HR manager), Gillard Louis (an account manager), and Terrill Carter (a site manager).  ECF Nos. 14, 14-2, 14-3, 14-4.  On March 14, 2023, Bethea withdrew her motion for a temporary restraining order after she was reassigned to an all-women shelter.  ECF No. 22; *see* ECF No. 23.

On May 26, 2023, Winfield moved for judgment on the pleadings.  Def. Mem.

## DISCUSSION

### I.     Legal Standard

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c). In deciding a Rule 12(c) motion, a court applies the same standard as that applicable to a motion under Rule 12(b)(6).  *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006).  In order to survive a Rule 12(c) motion, therefore, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The court must accept the allegations in the pleadings as true and draw all reasonable inferences in favor of the non-movant. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

In evaluating a Rule 12(c) motion, the Court may consider only the complaint, documents attached to the complaint, matters of which a court can take judicial notice, or documents that the plaintiff knew about and relied upon in bringing suit.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).  A claim will not be dismissed on a motion for judgment on the pleadings unless the Court is satisfied that the complaint cannot state any set of facts that would entitle a plaintiff to relief.  *Cleveland*, 448 F.3d at 521 (citation omitted). "This standard is applied with particular strictness when the plaintiff complains of a civil rights violation."  *Id*. (internal quotation marks and citation omitted).

### II.     Analysis

#### A.  Consideration of Materials External to the Complaint

Winfield seeks to introduce several documents in support of its motion that are extrinsic to the pleadings.  First, Winfield relies heavily on the three affidavits from Bethea's supervisors that it attached to its opposition to Bethea's motion for a temporary restraining order.  *See, e.g.*, Def. Mem.

3

at 2–4; *see also* Def. Reply at 2–5, ECF No. 38.  Bethea argues that these affidavits should not be considered at the Rule 12(c) stage.  Pl. Opp. at 3, ECF No. 37.  The Court agrees.

Winfield does not argue that the affidavits are "the complaint," "attached to the complaint," or documents "of which [Bethea] had knowledge and relied on in bringing suit."  *Chambers*, 282 F.3d at 153 (citation omitted); *see* Def. Reply at 2–3.  Instead, Winfield asks the Court to take judicial notice of the documents as "materials in the public record."  Def. Reply at 2.  Although the Court may take judicial notice of the existence of the affidavits, it may not, on a motion for judgment on the pleadings, rely on the documents for the truth of the statements contained therein.  *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006); *see also Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 304–06 (2d Cir. 2021) (holding that the district court erred on a Rule 12(c) motion by considering the factual allegations in the defendants' answer).  The Court will, therefore, decline to consider the affidavits and their attached exhibits in adjudicating Defendant's motion.

Second, Winfield cites Bethea's text message exchange with Carter, her supervisor, which she attached as an exhibit to her request for injunctive relief.  *See, e.g.*, Def. Mem. at 7 (citing ECF No. 9-4).  If a document is not incorporated by reference in the complaint, the Court may "nevertheless consider it where the complaint relies heavily upon its terms and effect," rendering it "integral to the complaint."  *Chambers*, 282 F.3d at 152–53 (cleaned up).  Here, however, because the text messages were exchanged after Bethea filed her complaint, the complaint does not reference them.  *See Safka Holdings LLC v. iPlay, Inc.*, 42 F. Supp. 3d 488, 491 (S.D.N.Y. 2013) (declining to consider documents where the complaint "neither references [them] nor relies on their terms and effect at all, let alone 'heavily'").  Winfield suggests that the Court may consider the text messages because they are "integral to . . . Plaintiff's emergent application for injunctive relief."  Def. Mem. at 2.  But the relevant question is whether the extrinsic document is integral to the pleadings.  Because the text

messages do not meet this standard, the Court will likewise disregard them in considering
Defendant's motion.

As an alternative to excluding the extrinsic materials under Rule 12(c), the Court could
convert the motion for judgment on the pleadings into a motion for summary judgment pursuant to
Rule 56.  *See* Fed. R. Civ. P. 12(d).  The Court declines to do so because Bethea has not yet had an
opportunity to take discovery.  *See Safka Holdings LLC*, 42 F. Supp. 3d at 491; *see also Hellstrom v.
U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) ("Only in the rarest of cases may
summary judgment be granted against a plaintiff who has not been afforded the opportunity to
conduct discovery.").

With the inquiry properly bounded, the Court next considers the merits of Defendant's
motion.

### B.  Title VII and NYSHRL Discrimination Claims

First, Bethea alleges that Winfield discriminated against her by failing to provide her with
requested "light work" during her pregnancy, in violation of Title VII and the NYSHRL.  Compl.
¶¶ 30–42.

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to
his compensation, terms, conditions, or privileges of employment, because of such individual's ...
sex[.]"  42 U.S.C. § 2000e-2(a)(1).  "The Pregnancy Discrimination Act makes clear that Title VII's
prohibition against sex discrimination applies to discrimination based on pregnancy."  *Young v.
United Parcel Serv., Inc.*, 575 U.S. 206, 210 (2015); *see* 42 U.S.C. § 2000e(k).

Similarly, the NYSHRL makes it an "unlawful discriminatory practice" for an employer to
discriminate against an individual "in compensation or in terms, conditions or privileges of
employment" based on sex.  N.Y. Exec. Law § 296(1)(a).  The NYSHRL also provides that it "shall
be an unlawful discriminatory practice for an employer . . . to refuse to provide reasonable

accommodations to the known disabilities, or pregnancy-related conditions, of an employee[.]" *Id.* § 296(3)(a).

The Second Circuit "typically treat[s] Title VII and NYHRL discrimination claims as analytically identical, applying the same standard of proof to both claims." *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 n.7 (2d Cir. 2019) (citation omitted). When a plaintiff lacks direct evidence of discriminatory intent, claims under both Title VII and NYHRL are governed by the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 74–75 (2d Cir. 2016). Under that framework, a plaintiff must first establish a prima facie case of discrimination. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015). Once a plaintiff has established a prima facie case, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for its allegedly disparate treatment. *Id.* If the employer articulates such a reason, the burden shifts back to the plaintiff to prove that the employer's reason "was in fact pretext" for discrimination. *Id.*

At the pleading stage, however, the plaintiff's burden is "reduced," and she need only "show[] facts suggesting an inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015) (citation omitted). Specifically, where an employee "alleges a failure to accommodate her pregnancy, to adequately plead a prima facie case she must plead sufficient facts to show '[1] that she belongs to the protected class, [2] that she sought accommodation, [3] that the employer did not accommodate her, and [4] that the employer did accommodate others similar in their ability or inability to work.'" *Xiang v. Eagle Enters., LLC*, No. 19 Civ. 1752, 2020 WL 248941, at *4 (S.D.N.Y. Jan. 16, 2020) (quoting *Legg v. Ulster Cnty.*, 820 F.3d 67, 73 (2d Cir. 2016)).

Here, Bethea has adequately alleged that (1) she was pregnant at the time of the relevant events; (2) she sought an accommodation for her pregnancy in the form of a transfer out of the mental

health shelter; and (3) Winfield did not accommodate her request.[2]  *See* Compl. ¶¶ 14–17.  But she does not allege the fourth element of the prima facie case: "that the employer did accommodate others similar in their ability or inability to work."  *Legg*, 820 F.3d at 73 (cleaned up).  Bethea does not claim that any other Winfield employees "were similar in their ability to work or that they requested or received accommodations of any sort."  *Medina v. AAM 15 Mgmt., LLC*, No. 21 Civ. 7492, 2023 WL 2648299, at *7 (S.D.N.Y. Mar. 27, 2023); *see also Biehner v. City of New York*, No. 19 Civ. 9646, 2021 WL 4924838, at *5 (S.D.N.Y. Oct. 20, 2021), *aff'd*, No. 21-2922, 2023 WL 3486237 (2d Cir. May 17, 2023) (dismissing gender-discrimination claim where plaintiff "fails to allege that those outside of her protected class were treated differently from her").  Bethea, therefore, fails to plead facts plausibly suggesting that Winfield discriminated against her based on her pregnancy.  Accordingly, Winfield's motion for judgment on the pleadings as to claims one and two of the complaint is GRANTED.

### C.  NYCHRL Discrimination Claim

Bethea also brings a pregnancy-discrimination claim under the NYCHRL, which the Second Circuit has instructed must be analyzed "separately and independently from any federal and state law claims."  *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013).  The NYCHRL "uses the same framework as Title VII and the NYSHRL, but contains, as to some elements, more liberal pleading and proof standards."  *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 327 (S.D.N.Y. 2020).  To establish a sex-discrimination claim under the NYCHRL, a plaintiff "need only demonstrate by a preponderance of the evidence that she has been treated less well than other employees because of her gender."  *Mihalik*, 715 F.3d at 109 (internal quotation

---

[2] Winfield contests the veracity of the allegations supporting the second and third prongs.  *See* Def. Mem. at 6–7.  But "a judge must accept as true all of the factual allegations contained in the complaint" when ruling on a motion for judgment on the pleadings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  And as explained above, the Court will not consider Winfield's extrinsic documents at this stage.

marks and citation omitted).  As discussed, however, Bethea cannot meet even this lower bar because she does not plead any facts alleging differential treatment because of her pregnancy.  *See Shukla v. Deloitte Consulting LLP*, No. 19 Civ. 10578, 2020 WL 3181785, at *11 (S.D.N.Y. June 15, 2020) (dismissing NYCHRL claim where plaintiff did not "plausibly allege[] that he was treated less well based upon his gender").  Accordingly, Winfield's motion is GRANTED as to claim three.

### D.  Title VII and NYSHRL Retaliation Claims

Next, Bethea alleges that Winfield retaliated against her by taking her off the schedule for two days after she requested accommodations, also in violation of Title VII and the NYSHRL.  Compl. ¶¶ 43–47.[3]

Title VII forbids an employer from discriminating against an employee because the employee "has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).  The NYSHRL similarly makes it unlawful for an employer to retaliate or discriminate against an employee because she "has opposed any practices forbidden under this article or because . . . she has filed a complaint, testified or assisted in any proceeding under this article."  N.Y. Exec. Law § 296(7).

To establish a prima facie case of retaliation, a plaintiff must allege: that "(1) she engaged in a protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) a causal connection existed between the protected activity and the adverse action." *McCormick v. Donovan*, 365 F. App'x 247, 249 (2d Cir. 2010).[4]  At the pleading

---

[3] In her NYSHRL and NYCHRL retaliation claims, Bethea alleges that "[t]he Defendants have colluded to willfully violate" the retaliation provisions of the state and local laws. *Id.* ¶¶ 47, 49.  However, Bethea's complaint names only one defendant—Winfield—and no individual defendants.  Accordingly, the Court understands Bethea's NYSHRL and NYCHRL claims to allege only that Winfield retaliated against her by removing her from the schedule after she requested accommodations.

[4] The same standards govern retaliation claims under both Title VII and the NYSHRL. *Farmer v. Shake Shack Enters.*, 473 F. Supp. 3d 309, 330 (S.D.N.Y. 2020).

8

stage, "the burden for establishing a prima facie case of retaliation is 'de minimis.'" *Duplan v. City of New York*, 888 F.3d 612, 626 (2d Cir. 2018) (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)).

First, Bethea has plausibly alleged that she participated in a protected activity. A pregnant employee's request for a reasonable accommodation can constitute a protected activity. *See Gratton v. Jetblue Airways*, No. 04 Civ. 7561, 2005 WL 1251786, at *10 (S.D.N.Y. May 25, 2005). Bethea alleges that, as an accommodation for her pregnancy-related medical appointments, she "asked both her supervisor[] and the company dispatch" to schedule her days off consecutively. Compl. ¶¶ 17–18. The Court finds that this request is "plausibly [pleaded] to have been a request to accommodate conditions caused by her pregnancy." *Farmer*, 473 F. Supp. 3d at 332. Further, Bethea's allegation that she asked a Winfield supervisor and dispatcher for the accommodation sufficiently alleges "general corporate knowledge," fulfilling the second prong. *Patane v. Clark*, 508 F.3d 106, 115 (2d Cir. 2007); *see Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 270 (S.D.N.Y. 2007) (complaints to supervisor "clearly satisfy" the knowledge requirement).

For the third prong, "in the context of a Title VII retaliation claim, an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Vega*, 801 F.3d at 90 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). This definition "covers a broader range of conduct than does the adverse-action standard for claims of discrimination under Title VII," which only proscribes discriminatory actions that "affect the terms and conditions of employment." *Vega*, 801 F.3d at 90 (citing *Burlington*, 548 U.S. at 64). "Although 'petty slights or minor annoyances' are not actionable, the Supreme Court has emphasized that '[c]ontext matters.'" *Smith v. N.Y. & Presbyterian Hosp.*, 440 F. Supp. 3d 303, 341 (S.D.N.Y. 2020) (quoting *Hicks*, 593 F.3d at 165)). "[S]omething might be a 'petty slight' to one person but 'matter enormously' to another, such that it could 'deter a reasonable

employee from complaining about discrimination.'" *Massaro v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 774 F. App'x 18, 22 (2d Cir. 2019) (quoting *Vega*, 801 F.3d at 90).

Here, Bethea alleges that "within approximately 24–32 hours" of her accommodation request, the dispatcher deleted Bethea's work schedule, causing her to lose "a day off and a workday as 'off the schedule.'" *Id.* ¶ 21.  Although Bethea's account of the incident is "far from maximally pellucid," *Farmer*, 473 F. Supp. 3d at 332, at this stage, the Court must construe the allegation in the light most favorable to her and infer that the dispatcher's action caused Bethea to lose at least one day of pay. Courts in this Circuit have held that forcing a plaintiff to forego one day's worth of wages constitutes an adverse action.  *See Satterfield v. United Parcel Serv., Inc.*, No. 00 Civ. 7190, 2003 WL 22251314, at *10, *12 (S.D.N.Y. Sept. 30, 2003); *see also Lovejoy–Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001) (suspension without pay for one week, even if plaintiff was later reimbursed, constitutes an adverse action); *Moore v. Conn. Dep't of Corr.*, No. 19 Civ. 1063, 2021 WL 4391244, at *6 (D. Conn. Sept. 24, 2021) (one-day suspension constitutes adverse action).  The Court similarly finds that Bethea's removal from the schedule rises above the level of a "petty slight[] or minor annoyance[]." *Smith*, 440 F. Supp. 3d at 341.  And although Bethea admits that she was "restored to the schedule a day later," Compl. ¶ 21, the Court cannot find that "the short duration" of the removal means that "no adverse employment action occurred." *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008).

On the fourth prong of causation, Bethea plausibly pleads a causal connection between her accommodation request and her removal from the schedule based on their close temporal proximity— within two days. *Vega*, 801 F.3d at 90; *see, e.g.*, *Feliciano v. City of New York*, No. 14 Civ. 6751, 2015 WL 4393163, at *10 (S.D.N.Y. July 15, 2015) (collecting cases requiring adverse action to occur within approximately two months of plaintiff's protected activity).

In all, Bethea plausibly pleads a claim for retaliation under Title VII and the NYSHRL, and Winfield's motion for judgment on these claims is DENIED.  "Discovery will test what the basis in fact was for" Bethea's removal from the schedule.  *Farmer*, 473 F. Supp. 3d at 334.

### E.  NYCHRL Retaliation Claim

Because the Court finds that Bethea has plausibly pleaded retaliation claims under Title VII and the NYSHRL, it follows that she has also pleaded a retaliation claim under the NYCHRL, "whose retaliation standard is similar to—but in part more permissive than—its federal and state analogues."  *Id.*  Accordingly, Winfield's motion for judgment on Bethea's NYCHRL retaliation claim is also DENIED.

## <u>CONCLUSION</u>

For the reasons set forth above, Winfield's motion for judgment on the pleadings is GRANTED as to Bethea's pregnancy-discrimination claims, and DENIED as to her retaliation claims.  The Clerk of Court is directed to terminate the motion at ECF No. 36.

SO ORDERED.

Dated:  December 14, 2023
     New York, New York

                    ANALISA TORRES
                United States District Judge