# EXHIBIT B


# NYC Commission on Human Rights Legal Enforcement Guidance on Discrimination on the Basis of Pregnancy, Childbirth, Related Medical Conditions, Lactation Accommodations, and Sexual or Reproductive Health Decisions

The New York City Human Rights Law ("NYCHRL") prohibits discrimination in employment, public accommodations, and housing. It also prohibits discriminatory harassment and bias-based profiling by law enforcement.[1] The NYCHRL, pursuant to the 2005 Civil Rights Restoration Act, must be construed "independently from similar or identical provisions of New York state or federal statutes," such that "similarly worded provisions of federal and state civil rights laws [are] a floor below which the City's Human Rights law cannot fall, rather than a ceiling above which the local law cannot rise."[2] In addition, exemptions to the NYCHRL must be construed "narrowly in order to maximize deterrence of discriminatory conduct."[3]

The New York City Commission on Human Rights (the "Commission") is the City agency charged with enforcing the NYCHRL. Individuals interested in vindicating their rights under the NYCHRL can choose to file a complaint with the Commission's Law Enforcement Bureau within one year of the discriminatory act and within three years for claims of gender-based harassment,[4] or file a complaint in court within three years of the discriminatory act.[5]

The NYCHRL prohibits unlawful discrimination in employment, public accommodations, and housing on the basis of actual or perceived pregnancy. It also requires employers to provide reasonable accommodation for the "needs of an employee for [their] pregnancy, childbirth, or related medical condition that will allow the employee to perform the essential requisites of the job, provided that such employee's pregnancy, childbirth, or related medical condition is known or should have been known by the employer."[6] The NYCHRL requires employers to provide lactation accommodations (including specific lactation accommodations set forth in the law) and also prohibits employers from discriminating based on employees' actual or perceived sexual or reproductive health decisions. This document serves as the Commission's legal enforcement guidance on the NYCHRL's protections as they apply to discrimination and reasonable accommodations based on pregnancy, childbirth, or related medical conditions; the specific employer requirements related to lactation accommodations; and discrimination based on sexual and reproductive health decisions. This document is not intended to serve as an exhaustive list of all forms of these discrimination claims under the NYCHRL.

## I    Legislative Intent

Pregnancy discrimination under the NYCHRL is discrimination based on gender.[7] Prior to 2014, however, people who needed reasonable accommodations in the workplace relating to pregnancy or for medical conditions related to pregnancy or childbirth had to show that their conditions amounted to a

---

[1] Local Law No. 85 § 1 (2005); *see* N.Y.C. Admin. Code § 8-130(a) ("The provisions of this title shall be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York state civil and human rights laws, including those laws with provisions worded comparably to provisions of this title, have been so construed.").
[2] Local Law No. 35 (2016); N.Y.C. Admin. Code § 8-130(b).
[3] Local Law No. 78 (2013); N.Y.C. Admin. Code § 8-107(22)(a).
[4] N.Y.C. Admin. Code § 8-109(e).
[5] *Id.* § 8-402(a).
[6] Protections related to employees also apply to interns, freelancers, and independent contractors. *Id.* § 8-107(23).
[7] "Pregnancy discrimination is a form of gender discrimination under the NYCHRL." *Cameron v. N.Y.C. Dep't of Educ.*, No. 15-CV-9900 (KMW), 2018 WL 1027710, at *10 (S.D.N.Y. Feb. 21, 2018) (citing *Chauca v. Abraham*, 841 F.3d 86, 90 n.2 (2d Cir. 2016), *as amended* (Nov. 8, 2016)). The NYCHRL prohibits "an employer or an employee or agent thereof, because of the actual or perceived . . . gender . . . of any person" from "discriminat[ing] against such person in compensation or in terms, conditions or privileges of employment." N.Y.C. Admin. Code § 8-107(1)(a)(3).



temporary disability. As a result, people with uncomplicated pregnancies were regularly denied even the most minor accommodations and forced to work under conditions that compromised their pregnancies and their well-being. Realizing that the law, as it was often interpreted, excluded individuals with routine pregnancies from requesting and receiving accommodations, on October 2, 2013, New York City enacted Local Law 78, the Pregnant Workers Fairness Act, to affirmatively require employers to reasonably accommodate "the needs of an employee for her pregnancy, childbirth, or related medical condition" without necessitating that the employee's limitation qualifies as a disability.[8]

The legislative history of the Pregnant Workers Fairness Act reflects the growing recognition that expanded protections for employees related to pregnancy, childbirth, and related medical conditions are necessary. Given the often time-sensitive nature of accommodations needed for pregnancy, childbirth, and related medical conditions, and the relatively short duration of the need, reasonable accommodations related to pregnancy, childbirth, and related medical conditions are intended to be liberally granted so that employees may continue working without compromising their health or safety, or the safety of their pregnancy. With an overwhelming majority of women working late into their pregnancies and an increasing number of families relying on the income of working women as primary breadwinners,[9] protecting an individual's right to maintain stable employment while raising a family is increasingly important to the overall health and well-being of families and children.

Similarly, a package of bills to specifically address the rights of workers to lactation accommodations was introduced in 2018. While lactation was already considered a pregnancy-related medical condition under the NYCHRL for which employees had a right to a reasonable accommodation, the new bills established mandatory requirements for employers to provide specific reasonable lactation accommodations to employees who need to express breast milk in the workplace, including to create a lactation room with specific minimum requirements and to require employers to have and distribute amongst its employees a lactation accommodation policy.[10]

The City then enacted Local Law 20 on January 20, 2019, a law preventing employers from discriminating against their employees because of any decision related to sexual or reproductive health, including but not limited to birth control, fertility treatments, sterilization procedures, HIV testing, and abortion.[11]

## II  Definitions

These definitions are intended to help people understand the following guidance as well as their rights and responsibilities under the NYCHRL.

**Childbirth:**
labor or childbirth, whether or not it results in a live birth.[12]

**Cooperative Dialogue:**
the process by which an employer and a person entitled to an accommodation, or who may be entitled to an accommodation under the law, engage in good faith in a written or oral dialogue concerning the person's accommodation needs; potential accommodations that may address the person's accommodation needs, including alternatives to a requested accommodation; and any difficulties that such potential accommodations may pose for the employer.[13]

---

[8] N.Y.C. Admin. Code § 8-107(22)(a).
[9] Dina Bakst, Elizabeth Gedmark & Sarah Brafman, Long Overdue, A BETTER BALANCE, 26 (May 2019), https://www.abetterbalance.org/wp-content/uploads/2019/05/Long-Overdue.pdf.
[10] Local Law 185 (2018); Local Law 186 (2018), codified as N.Y.C. Admin. Code §§ 8-107(22)(b)–(c).
[11] Local Law 20 (2019) codified as N.Y.C. Admin. Code §§ 8-102, 8-107(1).
[12] 47 R.C.N.Y. § 2-01.
[13] N.Y.C. Admin. Code § 8-102.



**Lactation Room:**
> a sanitary place, other than a restroom, that can be used to express breast milk shielded from view and free from intrusion and that includes, at minimum, an electrical outlet, a chair, a surface on which to place a breast pump and other personal items, and nearby access to running water.[14]

**Pregnancy:**
> being pregnant, and symptoms of pregnancy, including, without limitation, nausea, morning sickness, dehydration, increased appetite, swelling of extremities, and increased body temperature.[15]

**Related Medical Condition:**
> any medical condition that is related to or caused by pregnancy or childbirth or the state of seeking to become pregnant, including, but not limited to, infertility, gestational diabetes, pregnancy-induced hypertension, hyperemesis, preeclampsia, depression, miscarriage, lactation, and recovery from childbirth, miscarriage, and termination of pregnancy.[16]

**Sexual or Reproductive Health Decision:**
> any decision by an individual to receive or not to receive services, which are arranged for or offered or provided to individuals relating to sexual or reproductive health, including the reproductive system and its functions. Such services include, but are not limited to, fertility-related medical procedures, sexually transmitted disease prevention, testing, and treatment, and family planning services and counseling, such as birth control drugs and supplies, emergency contraception, sterilization procedures, pregnancy testing, and abortion.[17]

### III  Violations of the NYCHRL's Prohibitions on Discrimination Based on Pregnancy, Childbirth, and Related Medical Conditions

#### A. Disparate Treatment

Discrimination based on actual or perceived pregnancy, childbirth, or related medical conditions is prohibited under the NYCHRL in employment, housing, and public accommodations.[18] Pregnancy discrimination is a form of gender discrimination.[19] Similarly, discrimination based on menstruation is a form of gender discrimination.[20] Treating an individual less well than others because of their actual or perceived pregnancy or related medical condition is a violation of the NYCHRL. To establish disparate treatment under the NYCHRL, an individual must show that the treatment or adverse action was motivated at least in part by discriminatory animus.[21] An individual may demonstrate this through direct evidence of discrimination or indirect evidence that gives rise to an inference of discrimination.[22]

---

14  *Id.*
15  47 R.C.N.Y. § 2-01.
16  *Id.*
17  *Id.*
18  N.Y.C. Admin. Code § 8-107; 47 R.C.N.Y. § 2-09(a).
19  *See Cameron,* 2018 WL 1027710, at *10; N.Y.C. Admin. Code § 8-107(1)(a)(3).
20  *See, e.g., Conner v. Schrader-Bridgeport Int'l, Inc.*, 227 F.3d 179, 189 (4th Cir. 2000) (court held there was sufficient evidence for jury to support a finding of hostile work environment under Title VII where female former employee suffered from uterine bleeding episodes at work and employer told her, when she asked for permission to go home, "You show me that you're bleeding, and I'll let you go"); *Harper v. Thiokol Chemical Corp.*, 619 F.2d 489, 492–93 (5th Cir. 1980) (Employer's policy requiring women who had been on pregnancy leave to have sustained a "normal" menstrual cycle before returning to work constituted an unlawful employment practice).
21  *See Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 78 (1st Dep't 2009).
22  Examples of direct evidence could include explicit statements by a covered entity that an adverse action was based on a protected status or explicitly discriminatory policies. *See In re Comm'n on Human Rights ex rel. Stamm v. E&E Bagels*, OATH Index No. 803/14, Comm'n Dec. & Order, 2016 WL 1644879, at *4 (Apr. 21, 2016). A plaintiff may prevail in an action under the NYCHRL if "he or she proves that unlawful discrimination was one of the motivating factors, even if it was not the sole motivating factor, for



While adverse treatment may be overt, such as refusing to accept a rental application for an apartment because the applicant is pregnant or firing an employee because they are pregnant or pumping at work, discriminatory conduct on the basis of pregnancy often manifests itself in more subtle and patronizing ways. Such subtle forms of discrimination are also actionable under the NYCHRL because they subject pregnant workers to lesser treatment. Whether intentional or unintentional, these actions push pregnant individuals out of the job market, disrupt earnings, hamper economic advancement, and violate the NYCHRL.

1. *Disparate Treatment Based on Stereotypes or Assumptions Regarding Pregnancy, Childbirth, or Related Medical Conditions*

Judgments and stereotypes about how pregnant individuals should behave, their physical capabilities, and what is or is not healthy for a fetus are pervasive in our society and cannot be used as pretext for unlawful discriminatory decisions in employment, housing, and public accommodations.[23] Adverse treatment of pregnant individuals based on assumptions and stereotypes about the capacity, reliability, or dedication of pregnant workers is similarly unlawful under the NYCHRL.[24] Assumptions about a pregnant worker's commitment to their job or career, for example, are often rooted in traditional gender norms around parenting and women in the workforce, and may not be used to justify disparate treatment.

**Examples of Violations**
- An employer decides not to offer a promotion to a pregnant employee who is otherwise qualified based on the assumption that they will likely decide not to return to work after childbirth.
- An employer elects not to assign a pregnant employee to a new project after learning the employee is pregnant because he is concerned that the employee will be distracted by the pregnancy.
- A bouncer denies a pregnant individual entrance to a bar based on the belief that pregnant individuals should not be going to bars and/or drinking alcohol.
- An employer does not hire someone otherwise qualified because the applicant is pregnant and the employer assumes they will likely miss too much work after childbirth.
- A landlord refuses to accept a housing application from a person based in part on their pregnancy.
- A hotel worker refuses to let a pregnant guest use the hotel hot tub.

2. *Harassment Based on Pregnancy, Childbirth, or Related Medical Conditions*

Under the NYCHRL, gender-based harassment related to pregnancy, childbirth, or related medical conditions covers a broad range of conduct that causes an individual to be treated less well because of their actual or perceived pregnancy, including conduct related to sex stereotyping, bias, or objectification. Gender-based harassment may consist of a single incident[25] or repeated acts or behavior. Unlawful harassment exists when the incident or behavior creates, reflects, or fosters an atmosphere or culture that is demeaning, humiliating, or offensive. While the severity or pervasiveness of the harassment is relevant to damages, the existence of differential treatment based on pregnancy is sufficient under the

---

an adverse employment decision, or that the action was 'more likely than not based in whole or in part on discrimination.'" *Melman v. Montefiore Med. Ctr.*, 98 A.D.3d 107, 127 (1st Dep't 2012) (quoting *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 80 (2d Cir. 2009)). If plaintiff makes this prima facie showing, then the burden shifts to the employer to rebut the presumption of discrimination by demonstrating that there was a legitimate and non-discriminatory reason for its employment decision. If the employer articulates a legitimate, non-discriminatory basis for its decision, then the burden shifts back to the plaintiff "to prove that the legitimate reasons proffered by defendant were merely a pretext for discrimination." *Ferrante v. Am. Lung Ass'n*, 90 N.Y.2d 623, 629–30 (1997); *see Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). *Fields v. Dep't of Educ. of N.Y.*, No. 154283/2016, 2019 WL 1580151 (Sup. Ct. N.Y. Cty. Apr. 12, 2019).

[23] 47 R.C.N.Y. § 2-09(a).
[24] *Id*.
[25] *See Cardenas v. Automatic Meter Reading Corp.*, OATH 1240/13, Dec. & Order, 2015 WL 7260567, at *8 (Oct. 28, 2015) (citing *Williams*, 872 N.Y.S.2d at 41 n.30).



NYCHRL to state a claim of gender-based harassment.[26] Harassment may include comments about a pregnant individual's weight or appearance or about pumping, their age in relation to their pregnancy, their commitment to their job, or their ability to focus.

**Examples of Violations**
- An employer makes offensive jokes and comments on the basis of an individual's pregnancy, such as talking about weight gain or stating that pregnancy is making the individual overly sensitive.
- A restaurant manager tells a patron to leave the restaurant because the patron is breastfeeding their child and exposing their breast.
- A manager fails to intervene after overhearing several employees call their coworker a cow, saying comments like: "Hey! Can I get milk with my coffee?" and "How about you do one, and I'll do the other."[27]
- Because of their pregnancy, an employee begins receiving negative performance reviews and fewer work assignments.
- A student at school is bullied for being pregnant. They tell one of their teachers about the bullying and the teacher does nothing.

### 3. *Policies that Single Out People Who Experience Pregnancy, Childbirth, or Related Medical Conditions*

Any policy that singles out people who experience pregnancy, childbirth, or related medical conditions is unlawful disparate treatment under the NYCHRL.[28] Discriminatory policies may be directed at individuals who are currently pregnant or those believed capable of or likely to become pregnant in the future. Unlawful policies include those that categorically exclude pregnant workers or workers who are capable of becoming pregnant from specific job categories or positions,[29] deny entrance to pregnant individuals to certain public accommodations or refuse to serve certain foods or drinks to pregnant individuals or individuals perceived to be pregnant. This is true even if covered entities attempt to justify certain categorical exclusions based on their concerns for the safety of the pregnant individual or their fetus.[30] Using safety as a pretext for discrimination or as a way to reinforce traditional gender norms or stereotypes is unlawful.[31]

**Examples of Violations**
- A hospital regularly drug tests pregnant people without their consent but does not test nonpregnant patients without their consent.
- An employer does not permit an individual to continue to accrue vacation and sick time while on leave to recover from childbirth, despite allowing other employees to continue to accrue vacation and sick time while on temporary disability leave.
- An employer refuses to hire pregnant individuals for specific positions or consider them for certain promotions because the positions involve working with hazardous chemicals.[32]
- A restaurant policy prohibits staff from serving pregnant people raw fish or coffee.
- A drug detoxification program has a blanket rule prohibiting any pregnant person from participating.
- An employer requires all pregnant employees to start taking unpaid leave at a certain month in their pregnancy.
- An employer's policy requires medical clearance from pregnant workers to perform certain job duties when medical clearance is not required for other employees.

---

[26] *Goffe v. NYU Hosp. Ctr.*, 201 F. Supp. 3d 337, 351 (E.D.N.Y. 2016) ("the federal severe or pervasive standard of liability no longer applies to NYCHRL claims, and the severity or pervasiveness of conduct is relevant only to the scope of damages…"); *Williams*, 872 N.Y.S.2d at 38.
[27] *See Kim v. Goldberg,* No. 153013/12, 2013 WL 1783550 (N.Y. Sup. Ct. Apr. 12, 2013) (plaintiff who was in the process of expressing breast milk was told by coworker "women who breast fed were cows").
[28] 47 R.C.N.Y. § 2-09(b).
[29] *Id*. § 2-09(f)(5).
[30] *Id*. § 2-09(b).
[31] *Id*.
[32] *See generally*, *UAW v. Johnson Controls, Inc.,* 499 U.S. 187 (1991).



- A hospital policy allows medical providers to override the informed consent of a patient with capacity to provide consent for medical procedures only when the patient is pregnant.
- An employer has a policy of not hiring female job applicants of childbearing age out of fear that they may be or will become pregnant.[33]

### B. Neutral Policies or Practices that Have a Disparate Impact on People Who Experience Pregnancy, Childbirth, or Related Medical Conditions

A covered entity's neutral policy or practice may have a disparate impact on people who experience, or are perceived to experience, pregnancy, childbirth, or related medical conditions, meaning it may in effect exclude or disproportionately impact individuals based on pregnancy or related conditions.[34] Facially neutral policies or practices can include, without limitation, light duty policies, hiring practices, and housing restrictions. An entity may be liable for disparate impact discrimination if it fails to plead and prove that: (1) the policy or practice or a group of policies or practices bears a significant relationship to a significant business objective of the covered entity; or (2) does not contribute to the disparate impact.[35] An entity may also be liable for disparate impact discrimination if there is substantial evidence that an alternative policy or practice with less disparate impact is available to the covered entity and the covered entity fails to prove that such alternative policy or practice would not serve the covered entity as well.[36]

For example, a policy that permits workers to be moved to light duty only for on-the-job injuries would likely have a disparate impact on pregnant workers and constitute a violation of the NYCHRL unless the covered entity can show that the alleged policy or practice bears "a significant relationship to a significant business objective of the covered entity or does not contribute to the disparate impact."[37] Similarly, an employer with a policy that limits all employees to three fifteen-minute breaks without any exceptions would likely have a disparate impact on workers with a pregnancy-related medical condition if it does not give employees who need to express breast milk enough time to do so.

### C. Failure to Provide Reasonable Accommodations in Employment Based on Pregnancy, Childbirth, or Related Medical Conditions

The NYCHRL requires an employer to provide reasonable accommodations for an employee's pregnancy, childbirth, or related medical condition that will allow the employee to perform the essential requisites of the job,[38] so long as the employer knew or should have known of the employee's pregnancy, childbirth, or related medical condition.[39] While many pregnant employees or employees who have recently experienced childbirth or a related medical condition will be able to work without any need for modification, some may require modest and/or temporary reasonable accommodations to allow them to feel well and continue to work while maintaining a healthy pregnancy or recovery. Reasonable accommodation is defined as such accommodation that can be made that shall not cause undue hardship "in the conduct of the covered entity's business."[40]

While reasonable accommodations for individuals with disabilities under the NYCHRL have historically included medical conditions related to pregnancy or childbirth, the enactment of the Pregnant Workers Fairness Act obviated the need to request accommodations in employment through the disability

---

[33] 47 R.C.N.Y. § 2-09(b)(1).
[34] N.Y.C. Admin. Code § 8-107(17); 47 R.C.N.Y. § 2-09(c).
[35] N.Y.C. Admin. Code § 8-107(17); 47 R.C.N.Y. § 2-09(c).
[36] N.Y.C. Admin. Code § 8-107(17); 47 R.C.N.Y. § 2-09(c).
[37] N.Y.C. Admin. Code § 8-107(17)(a)(2).
[38] In raising this defense, an employer must also show that there are no comparable positions available for which the employee is qualified that would accommodate the employee, and that a lesser position or an unpaid leave of absence is either not acceptable to the employee or would pose an undue hardship. *See infra* p. 11 for a discussion on when an employer may offer an alternative position or unpaid leave as a reasonable accommodation.
[39] This provision applies only in the context of employment. *See* N.Y.C. Admin. Code § 8-107(22); 47 R.C.N.Y. § 2-09(e).
[40] *See* N.Y.C. Admin. Code § 8-102.



framework, meaning that pregnant people need not show they have a disability to qualify for a reasonable accommodation in employment. However, when the pregnancy, childbirth, or related medical condition qualifies as a disability under the NYCHRL, an employee may also be entitled to reasonable accommodations based on disability.

The NYCHRL is more protective than the federal Pregnancy Discrimination Act of 1978 and requires employers to make reasonable accommodations for pregnancy, childbirth, or related medical conditions regardless of whether and to what degree other employees are accommodated.[41] Minor or temporary modifications to work schedules, requests for temporary job or shift reassignments, additional breaks or requests to sit during shifts, and temporary unpaid leave, regardless of whether they are offered to other employees, must be granted absent evidence that such accommodations will pose an undue hardship for the employer.[42] The employer has the burden to show such accommodation poses an undue hardship.[43]

Under the NYCHRL, employers must provide reasonable accommodations for pumping or expressing milk in the workplace and are required—at a minimum—to provide certain lactation accommodations, including a lactation room, as defined in the law, that must be near running water and a refrigerator, and must satisfy other requirements listed under Sections 8-102 and 8-107(22)(c) of the NYCHRL. This is further discussed in subsection 4 below.

To establish discrimination on the basis of an employer's failure to provide a reasonable accommodation, the aggrieved individual must show: (1) they are pregnant, have recently experienced childbirth, or have a medical condition related to pregnancy or childbirth; (2) they requested a reasonable accommodation due to pregnancy, childbirth, or a related medical condition, or the employer knew or should have known that they were in need of an accommodation due to pregnancy, childbirth, or a related medical condition; and (3) the employer failed to provide a reasonable accommodation. For a requested accommodation that is not specifically required under the NYCHRL, the employer must engage in a cooperative dialogue with the person making the request by having a good faith dialogue, either orally or in writing, about their accommodation needs and must provide the person with a final written determination.[44]

   1. *Process for Requesting or Offering Reasonable Accommodations*

        a. Initiating a Cooperative Dialogue

When an employer learns, either directly or indirectly, that an employee requires an accommodation due to pregnancy, childbirth, or a related medical condition, an employer must engage in a cooperative dialogue with the employee.[45] Where an employee has not requested an accommodation, the employer

---

[41] See id. § 8-107(22). The premise of the Pregnancy Discrimination Act of 1978 ("PDA") is one of equal treatment: employers must treat pregnancy like any other temporary medical condition. Specifically, the PDA sets forth that employers must treat "women affected by pregnancy . . . the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k).

[42] N.Y.C. Admin. Code § 8-107(22)(b); 47 R.C.N.Y. § 2-09(e)(1). See discussion of accommodations *infra* pp. 10–12. *See* discussion on essential requisites of the job *infra* p. 17.

[43] In assessing whether an undue hardship exists, factors to be considered include:
   (a) The nature and cost of the accommodation; (b) The overall financial resources of the facility or the facilities involved in the provision of the reasonable accommodation; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such accommodation upon the operation of the facility; (c) The overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees, the number, type, and location of its facilities; and (d) The type of operation or operations of the covered entity, including the composition, structure and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.
N.Y.C. Admin. Code § 8-102.

[44] *Id.* § 8-107(28); 47 R.C.N.Y. § 2-09(f).

[45] N.Y.C. Admin. Code § 8-107(28)(a)(3).



has an affirmative obligation to initiate a cooperative dialogue when the employer: (1) has knowledge that an employee's performance at work has been affected or that their behavior at work could lead to an adverse employment action; and (2) has a reasonable basis to believe that the issue is related to pregnancy, childbirth, or a related medical condition.[46] The employer should be cautious in initiating the cooperative dialogue in a way to open the conversation and invite the employee to feel comfortable in making a request, such as asking if there is anything going on with the employee, or reminding the employee of the various types of support available, including accommodations. An employer's obligation to engage in the cooperative dialogue when they "should know" about an employee's pregnancy, childbirth, or related medical condition is not a permissible basis for an employer to act on speculation based on stereotypes or assumptions about pregnancy.[47] The obligation to initiate a cooperative dialogue can be met simply by reminding the employee of the employer's accommodations policy.[48] If an employer approaches an employee to initiate a cooperative dialogue and the employee does not reveal that they are pregnant in that conversation, the employee does not waive their opportunity to reveal their pregnancy and initiate a cooperative dialogue with their employer at a later time.[49]

In order to avoid situations in which employers are not sure whether employees are aware of their right to request reasonable accommodations and engage in a cooperative dialogue, the NYCHRL requires employers to provide a notice of rights to all new employees detailing their rights to be free from discrimination based on pregnancy, childbirth, or related medical conditions. Such notice may also be conspicuously posted at an employer's place of business in an area accessible to employees.[50]

      b. Engaging in a Cooperative Dialogue

The purpose of a cooperative dialogue is to ensure that employers understand the individual needs of their employees and have the opportunity to explore the various ways in which they can meet those needs. Without this type of dialogue, employees and employers may not realize the full universe of available accommodations. The employer need not provide the specific accommodation sought by the employee so long as they propose reasonable alternatives that meet the specific needs of the employee or that specifically address the limitation at issue.

A cooperative dialogue involves an employer communicating in good faith with the employee in an open and expeditious manner, particularly given the time-sensitive nature of these requests.[51] The employer should focus on understanding the employee's specific need and how the request can be accommodated, without making assumptions about what requests are reasonable or unreasonable. The dialogue may be in person, by phone, or via electronic means. If an employer has a "no-fault" or absence-control attendance policy, an employer may not assess points or violations or take disciplinary action pursuant to the policy prior to engaging in a written or oral dialogue related to a person's accommodation needs.

In evaluating whether or not an employer has engaged in a cooperative dialogue in good faith with an employee, the Commission will consider various factors, including: (1) whether the employer has a written policy for employees about how to request accommodations based on pregnancy, childbirth, or related medical conditions; (2) whether the employer responded to the request in a timely manner in light of the urgency of the request; (3) whether the employer attempted to explore the existence and feasibility of alternative accommodations or alternative positions; and (4) whether the employer tried to block or delay the cooperative dialogue or in any way intimidate or deter the employee from requesting the accommodation.[52]

---

[46] 47 R.C.N.Y. § 2-09(f).
[47] *Id.* § 2-09(f)(1).
[48] *Id.*
[49] *Id.* § 2-09(f).
[50] N.Y.C. Admin. Code § 8-107(22)(b); *see infra* pp. 17–18 for discussion on notices.
[51] *See* 47 R.C.N.Y. § 2-09(f)(2); N.Y.C. Admin. Code § 8-102 (definition of *cooperative dialogue*).
[52] 47 R.C.N.Y. § 2-09(f)(2).



c. <u>Concluding a Cooperative Dialogue</u>

A cooperative dialogue is ongoing until one of the following occurs: (1) a reasonable accommodation is reached; or (2) the employer reasonably arrives at the conclusion that (i) there is no accommodation available that will not cause an undue hardship to the employer, or (ii) that no accommodation exists that will allow the employee to perform the essential requisites of the job.[53] Once a conclusion is reached, either to offer an accommodation or that no accommodation can be made, an employer should promptly notify the employee of the determination in writing.[54]

If the employee rejects an accommodation offered by the employer, the employer should continue to engage with the employee to identify alternatives. However, if the employee rejects accommodations offered that would not cause an undue hardship to the employer and would meet the employee's needs and/or would allow the employee to perform the essential requisites of the job and is unable or unwilling to propose any alternative options that would address their needs, the employer may conclude the cooperative dialogue. If there are two possible reasonable accommodations and one costs more or is more burdensome than the other, the employer may choose the less expensive or burdensome accommodation. If more than one accommodation is effective, the preference of the employee should be given primary consideration, but the employer has the ultimate discretion to choose between effective accommodations.[55]

Where an accommodation proposed by an employee is immediately agreed to by an employer, the cooperative dialogue will have been successfully completed. Under such circumstances, the cooperative dialogue will consist solely of the employee making the request and the employer granting the accommodation. As an employee's condition changes over time, an employee may make new requests for accommodations. Each time an employee makes a new request, the employer must engage in a cooperative dialogue with the employee.

Beyond the legal requirement to provide a written final determination,[56] employers should document all efforts to initiate, engage in, and conclude the cooperative dialogue with an employee. Employers should keep a log for each employee in which they document the following information:
- when and under what circumstances the cooperative dialogue was initiated;
- what information, if any, was provided by the employee to the employer throughout the cooperative dialogue;
- the employee's stated or observed limitation;
- the types of accommodations that were requested by the employee or suggested by the employer during the cooperative dialogue;
- the dates of each subsequent conversation relating to the accommodation between the employer and the employee;
- whether or not an accommodation was ultimately identified and, if not, justification, for denying an accommodation;
- a copy of the notice provided to the employee that the cooperative dialogue had ended.

Employers may be required to share this information with the Commission in the course of an investigation. Prompt responses to Commission requests for information or documents may help avoid a Commission-initiated investigation into employment practices. Employers should make all efforts to keep communications regarding requests for reasonable accommodations and all circumstances surrounding an employee's pregnancy, childbirth, or related medical condition confidential.

---

[53] *Id.* § 2-09(f)(3).
[54] N.Y.C. Admin. Code § 8-107(28)(d); 47 R.C.N.Y. § 2-09(f)(3).
[55] *NYC Commission on Human Rights Legal Enforcement Guidance on Discrimination on the Basis of Disability*, N.Y.C. COMM'N ON HUMAN RIGHTS, 67 (Apr. 2019) (in-depth discussion of cooperative dialogue process), https://www1.nyc.gov/assets/cchr/downloads/pdf/NYCCHR_LegalGuide-DisabilityFinal.2.pdf.
[56] N.Y.C. Admin. Code § 8-107(28)(d).



### d. Failure to Engage in a Cooperative Dialogue

An employer's failure to engage in a cooperative dialogue with an employee prior to denying a request for an accommodation is a violation of the NYCHRL.[57] Without engaging in a cooperative dialogue, an employer will not be able to completely assess the individual needs of the employee. An employer who fails to provide a reasonable accommodation to an employee for their pregnancy, childbirth, or related medical condition without engaging in a cooperative dialogue will not be able to demonstrate that they explored all available options that could have met the employee's needs and that no reasonable accommodation was available.

### 2. *Requesting Medical Documentation*

It is generally unnecessary and prohibited for employers to require an employee to provide medical confirmation of pregnancy, childbirth, or related medical conditions as part of the accommodation process.[58] In limited circumstances, an employer may request medical documentation to confirm that a person requires one of the following accommodations based on pregnancy, childbirth, or a related medical condition: (1) the employee is requesting time away from work, including for medical appointments[59] (other than the presumptive eight-week period[60] following childbirth for recovery from childbirth) *and* the employer typically requests verification from other employees requesting leave-related accommodations for reasons other than pregnancy, childbirth, or a related medical condition; or (2) an employee is requesting to work from home, either on an intermittent basis or a longer-term basis.[61] It is unnecessary and a violation of the law for an employer to request medical documentation for minor accommodations, including: minor or temporary modifications to work schedules; adjustments to uniform requirements or dress codes; additional or longer food, drink, bathroom, or rest breaks; being permitted to sit or eat at locations where eating or drinking is not typically allowed; moving a workstation to permit movement or stretching of extremities, or to be closer to a bathroom; limits on lifting; minor physical modifications to a workstation, including the addition of a fan or seat; periodic rest; assistance with manual labor; light duty or desk duty assignments; and temporary transfers to less strenuous or hazardous work, among others.[62]

During the time period in which an employee is making good faith efforts to obtain documentation for those limited circumstances when the employer may require it, the employer shall provide reasonable accommodation(s), absent undue hardship.[63] An employer also must not take adverse action against an employee related to their need for accommodation while the employee is engaging in good faith efforts to obtain documentation.[64]

If an employer believes that the provided documentation is insufficient, the employer must request additional documentation, or, upon the consent of the employee, speak with the health care provider who provided the documentation before denying the request based on insufficient documentation. An employer must always allow an employee to submit sufficient written verification should an employee not want their employer speaking with their medical provider.

---

[57] *Id*. § 8-107(28)(a).
[58] *See* N.Y. Exec. L. § 296(3)(c) (requiring employees to provide medical or other information that is "necessary" to the accommodation request); *see also* 9 NYCRR § 466.11(j)(5). 47 R.C.N.Y. § 2-09(g).
[59] 47 R.C.N.Y. § 2-09(g)(2).
[60] New York State Insurance Fund allows up to eight weeks as presumptive recovery period for uncomplicated childbirth. *See* New York State Insurance Fund, "About Your Disability Benefits Claim," https://ww3.nysif.com/Home/Claimant/DBClaimant/AboutYourClaim (last visited May 12, 2021); "The New Mother: Taking Care of Yourself After Birth," Stanford Children's Health, https://www.stanfordchildrens.org/en/topic/default?id=the-new-mother---taking-care-of-yourself-after-birth-90-P02693 (last visited June 26, 2021).
[61] 47 R.C.N.Y. § 2-09(g)(2).
[62] *Id*. § 2-09(g)(1). *See* N.Y. Exec. L. § 296(3)(c).
[63] 47 R.C.N.Y. § 2-09(g)(1).
[64] *Id*.



### 3. Common Types of Accommodations Based on Pregnancy, Childbirth, or Related Medical Conditions

Many pregnant employees or employees who have recently experienced childbirth or a related medical condition require only modest and/or temporary accommodations to allow them to continue working while maintaining a healthy pregnancy or recovery. Such accommodations will rarely pose an undue hardship on an employer and may include, without limitation:
- adjustments to uniform requirements or dress codes;
- additional or longer food, drink, bathroom, or rest breaks;
- allowing an individual to sit or eat at their workstation or other locations where eating or drinking is not typically allowed;
- moving a workstation to permit movement or stretching of extremities, or to be closer to a bathroom;
- minor physical modifications to a workstation, including the addition of a fan or seat; and
- periodic rest.[65]

Schedule modifications, job restructuring, and temporary reassignment to a vacant position may also qualify as a reasonable accommodation which will allow an employee to continue working despite a limitation based on pregnancy, childbirth, or a related medical condition.[66] Examples of such accommodations include, without limitation:
- adjustment of start or end time;
- reduced or modified work schedule;
- assistance with manual labor or limits on lifting;
- desk duty or light duty; and
- temporary transfer to an alternative position.[67]

In considering such accommodations, an employer's first obligation is to accommodate an employee so that they may remain in their current position.[68] When that is not possible, an employer may then consider whether the employee could be temporarily reassigned to a vacant position.[69] In considering alternative positions, an employer may consider the qualifications necessary for the position and whether the pay, status, and benefits are equivalent to the employee's current position.[70] When a comparable position is unavailable, an employer may then explore alternative positions that are not comparable.[71] As a last resort, when no other accommodation can be made, an unpaid leave of absence may be offered as a temporary accommodation.[72]

a. Leave Related to Childbirth

Leave requests to recover from childbirth must be granted absent an undue hardship. Should the leave request present an undue hardship, the employer must consider whether another accommodation, such as a shortened leave time, a reduced or modified work schedule, or working from home, would alleviate the hardship. As noted above, an employer may only request medical documentation for post-partum leave requests beyond eight weeks for childbirth.[73]

Once an accommodation of leave has been granted, employers must reinstate workers returning from leave related to childbirth to their original job or to an equivalent position with equivalent pay and comparable seniority, retirement benefits, and other fringe benefits.

---

[65] 47 R.C.N.Y. § 2-09(e)(1).
[66] *Id.*
[67] *Id.*
[68] *Id.* § 2-09(e)(2).
[69] *Id.*
[70] *Id.*
[71] *Id.*
[72] *Id.*
[73] *Id.* § 2-09(g)(2).



b. Accommodations Related to Abortions and Miscarriages

Miscarriages and abortions are directly related to pregnancy and childbirth and can impact an individual's health and wellbeing. Individuals who have experienced a miscarriage or terminated a pregnancy are entitled to reasonable accommodations from their employers. An individual who has miscarried or terminated a pregnancy may, for example, require a period of unpaid leave or paid sick leave, if available, to recover, or a more flexible schedule for a period of time to account for additional appointments related to the procedure or experience. If the request involves time away from work, an employer may request documentation from a medical or other service provider.[74]

c. Accommodations Related to Fertility Treatments

Fertility treatment directly relates to the state of seeking to become pregnant and therefore employers must provide reasonable accommodations for such treatment. Individuals undergoing fertility treatment may need modified or flexible work schedules or leave to allow them to attend appointments. If the request involves time away from work to attend appointments, employers may require medical documents of appointments related to fertility.[75] Employers must accommodate these requests absent an undue hardship.

*4. Lactation Accommodations*

Under the NYCHRL, employers must provide a reasonable accommodation for any employee needing to express breast milk.[76] The law requires employers to provide, in close proximity to the employee's work area: a lactation room; a refrigerator suitable for breast milk; and access to running water.[77] In addition, the law specifies that, absent an undue hardship, the lactation room must be a clean, sanitary, and private space, other than a bathroom, that is shielded from view and free from public intrusion from coworkers and includes at minimum an electrical outlet, a chair, a surface on which to place a breast pump and other personal items, and nearby access to running water.[78]

An employer should always ensure that the employee is aware of their rights to pump while working, including their right to request an accommodation, to pump for a reasonable amount of time, and to use established break times to pump.

a. Lactation Room

If there is a room that is exclusively used for lactation, the employer must ensure that the room is shielded from view[79] and should ensure that the door of the room has a lock and that employees who need access are provided the key or code needed for entry.[80] If the door cannot have a lock, a "Do Not Disturb" sign or other appropriate signage should be placed on the door or entrance of the space.[81]

If there is no dedicated lactation room, the employer must make a multi-purpose space available for lactation unless doing so poses an undue hardship.[82] The multi-purpose room must be used only as a lactation room while an employee is using the room to express breast milk.[83] The employer must communicate to other employees through appropriate signage or other means of communication that

---

[74] *Id.*
[75] *Id.*
[76] N.Y.C. Admin. Code § 8-107(22)(b); 47 R.C.N.Y. § 2-09(h).
[77] N.Y.C. Admin. Code §§ 8-102, 8-107(22)(b).
[78] *Id.* § 8-102.
[79] *Id.*
[80] 47 R.C.N.Y. § 2-09(h)(1)(i).
[81] *Id.*
[82] *Id.* § 2-09(h)(1)(ii).
[83] N.Y.C. Admin. Code § 8-107(22)(b)(ii); 47 R.C.N.Y. § 2-09(h)(1)(ii).



when the room is being used as a lactation room it may not be used for other purposes at that time.[84] The employer should also ensure that individuals expressing breast milk in the multi-purpose space can do so without intrusion and that the space has an electrical outlet, a chair, a surface, and nearby access to running water.[85]

If there is no dedicated lactation room and no multi-purpose room available because it poses an undue hardship, the employer must engage in a cooperative dialogue with the employee and discuss options to ensure employees are able to express breast milk at work.[86]

Though not required under the law, employers may consider providing additional amenities to improve the dedicated space for lactation. Such amenities may include dish soap and paper towels for cleaning and drying pump parts and bottles, storage space for pump kits, hooks for hanging clothes, cleaning supplies for pumps and sink areas, additional refrigerators if it is a large building with many employees, a dedicated refrigerator for breast milk, and a microwave for sterilizing pump parts. The better and more comfortable the space, the more efficiently the employee may pump, and the more promptly the employee can return to work.

  b. Lactation Time

Employers must provide a reasonable amount of break time for an employee to express breast milk.[87] An employer may not limit the amount of time that an employee uses to express milk unless the employer can demonstrate that the time needed presents an undue hardship to the employer.[88] Where an employer already provides compensated breaks, an employee who uses that break time to express milk must be compensated in the same way that other employees are compensated for break time.[89] There is no limit to the number of breaks an employee can take to pump.[90] An employee who wishes to express milk at their usual workstation must be permitted to do this so long as it does not create an undue hardship for the employer, regardless of whether a coworker, client, or customer expresses discomfort.[91] While an employee cannot be forced to work while pumping, if an employee is not fully relieved of their work duties while pumping, they must be compensated for the time they are working while pumping.

  c. Other Lactation Accommodations

If an employer is unable to provide one or more of the required components of a lactation room because of an undue hardship, the employer must engage in a cooperative dialogue with the employee to determine alternative accommodations that meet the employee's needs for each component that the employer cannot provide.[92] This includes when there is no dedicated lactation room or no multi-purpose room available, when a temporary partition cannot be provided to create a lactation space, and providing such a room or space would pose an undue hardship, or if other requirements tied to providing a lactation room cannot be met.[93]

---

[84] N.Y.C. Admin. Code § 8-107(22)(b)(ii); 47 R.C.N.Y. § 2-09(h)(1)(ii).
[85] N.Y.C. Admin. Code § 8-102; 47 R.C.N.Y. § 2-09(h)(1)(ii).
[86] 47 R.C.N.Y. § 2-09(h)(1)(iii).
[87] N.Y.C. Admin. Code §§ 8-107(22)(b)–(c); 47 R.C.N.Y. § 2-09(h)(2). New York State Law does not have an undue hardship exception for lactation accommodations. *See* N.Y. LAB. L. § 206-c. Under the Fair Labor Standards Act (FLSA), only employers with fewer than fifty employees have an undue hardship exception. 29 U.S.C. § 207(r)(3).
[88] *See* N.Y.C. Admin. Code §§ 8-107(22)(b)–(c); 47 R.C.N.Y. § 2-09(h)(2); N.Y. LAB. L. § 206-c.
[89] FLSA and New York State Labor Law also require employers to provide certain accommodations for employees to express breast milk. *See* U.S. Dep't of Labor, Wage and Hour Div., *Fact Sheet #73: Break Time for Nursing Mothers under the FLSA*, https://www.dol.gov/whd/regs/compliance/whdfs73.pdf (last visited June 26, 2021); N.Y. LAB. L. § 206-c.
[90] 47 R.C.N.Y. § 2-09(h)(2).
[91] *Id*. § 2-09(h)(3)(iv).
[92] N.Y.C. Admin. Code § 8-107(22)(c)(i)(5); 47 R.C.N.Y. §§ 2-09(f)(4), 2-09(h)(3)(i).
[93] 47 R.C.N.Y. § 2-09(h)(3)(i).



Employers may also need to provide additional or different lactation accommodations in order to meet additional or different needs of an employee beyond the accommodations statutorily required in Sections 8-107(22)(b) and 8-107(22)(c) of the NYCHRL.[94]

If the nature of the employee's job is mobile such that they do not have daily access to the employer's lactation room, the employer must ensure that the employee is aware of their right to express breast milk at work.[95] The employer must also engage in a cooperative dialogue with the employee to determine how to accommodate the employee's need to express milk, such as ensuring the employee has adequate equipment, space, and time for pumping while mobile.[96] For example, if providing a refrigerator poses an undue hardship for the employer, the employer must discuss reasonable alternative options for the employee to store their breast milk, which may include providing a cooling device or a container and ice packs. In addition, employers with employees who travel often must be able to provide basic lactation accommodations by thinking creatively and planning ahead. Below are a few examples of alternative lactation accommodations.

- An employer's office space does not have infrastructure to provide a lactation room nearby running water. An employer may offer sanitizing wipes and towels in the lactation room and indicate to its employees where the closest source of running water is, such as an office kitchen or bathroom.
- An employer cannot provide a lactation room with an electrical outlet. Instead, an employer may offer to provide an extension cord or other alternative power source for the designated lactation room.
- Due to the mobile nature of the employee's work, an employer cannot provide a lactation room for its employee. Instead, the employer gives the employee portable privacy screens, agrees to allow the employee to pump in the employer-provided vehicle between site visits, and provides sanitizing wipes and a cooler to store breast milk.
- An employee has been using their employer's lactation room for their pumping needs since recently returning from pregnancy leave. However, the employee has noticed that their work on some projects is disrupted by the time it takes to go to and come back from the lactation room. The employee requests a privacy screen from the employer so that they can pump from their desk. There is no undue hardship on the employer, and the employer provides the privacy screen for the employee to use while pumping.[97]

5. *Examples of Pregnancy-Related Accommodations*

- A pregnant employee requests to be put on light duty during her pregnancy because she is worried that lifting packages over twenty pounds may compromise her pregnancy. In making this request, the employee is initiating the cooperative dialogue. She informs her employer that she is pregnant and does not wish to lift packages over twenty pounds, which is a task she is frequently required to do. The employer concludes the cooperative dialogue by offering the accommodation of putting the employee on light duty for the remainder of the employee's pregnancy, which the employee accepts. The employer provides the employee with written notice that the accommodation has been granted.
- An employee's work uniform interferes with their ability to express breast milk during pumping breaks. As a reasonable accommodation, their employer provides a modified uniform and gives written notice that the accommodation has been granted.
- An employer notices that an employee has been leaving work early and not finishing tasks as quickly as usual. The employer heard a rumor that the employee is pregnant. The employer approaches the employee and initiates a cooperative dialogue. The employer says, "I have noticed you are struggling to finish your tasks as quickly as usual, is there something I can do to help?" The employee says no. The problem persists, and the employer again approaches the employee and offers assistance, but also notifies the employee that the tasks need to be completed more quickly

---

[94] *Id*. § 2-09(h)(3)(ii).
[95] *Id*. § 2-09(h)(3)(v).
[96] *Id*.
[97] *Id*. § 2-09(h)(3)(vi).



and something needs to change. The employer tells the employee that they will check in again in a week or so and reiterates that they will work to accommodate or otherwise support the employee if there is anything going on, reminding her of the company's policy of providing reasonable accommodations related to pregnancy and disability. The employer never mentions pregnancy specifically because they do not know with any certainty that the employee is pregnant. During the next follow-up conversation, the employer tells the employee that the employee will be written up if the behavior does not improve and again asks if the employee needs assistance and offers to set up a meeting to discuss the issue. The employee declines, and after another week, the employer issues a disciplinary notice. The employer attempted to engage the employee in a cooperative dialogue because they believed the employee may have needed accommodations based on pregnancy. Despite repeated attempts to engage the employee in a cooperative dialogue, the employee was not responsive. Under these circumstances, the employer was justified in taking disciplinary action.

- All employees must participate in a mandatory meeting every Thursday morning. An employer notices that one employee has been consistently missing the weekly meetings or joining late. The employer approaches the employee, admonishes them, and says if this happens again, they will be written up. The employee is eight weeks pregnant and has been missing the meetings because they have not been feeling well; however, due to the early stages of their pregnancy, they do not share this information with their boss. Two weeks later, after continued lateness, the employee is disciplined. The employee would have been entitled to a reasonable accommodation if they had requested one or if their employer had been on notice of their pregnancy. However, because the employer had no reason to know that the employee was pregnant, the employer was under no obligation to initiate a cooperative dialogue.

- An employee who does data entry at a small company initiates a cooperative dialogue with her employer by asking the employer if she can take unpaid leave every Friday morning to attend medical appointments related to her pregnancy. The employee is the only person who does the data entry at the office. Although the employee's absence would not create an undue hardship for the employer as the immediate impact on the business would be minimal, the employer is concerned about the long-term cumulative effect of getting behind on the data entry. The employer suggests as an alternative that the employee make up the hours that she needs for the appointment on another day, so that she can attend her appointments but still get the work done. The employee accepts the alternative change in schedule. The employer, through a cooperative dialogue, was able to offer an alternative accommodation that met the employee's need for time off to attend appointments. The employer provides written notice to the employee that the cooperative dialogue has concluded and the proposed accommodation accepted.

- An employer notices that an individual who is employed as a bus driver has been uncharacteristically behind schedule for the last few weeks. The employer is concerned and approaches the employee to ask what is going on. The employee confides in the employer that she is pregnant and, due to extreme nausea, the employee has to frequently pull over and exit the bus. The employer initiates a cooperative dialogue with the employee by offering to sit down with her and think about whether there are ways to accommodate her during this time. During a cooperative dialogue, the employer and the employee are unable to find an accommodation that would enable the employee to keep driving the bus and also manage her nausea. The employer considers whether there are any comparable alternative jobs available that would accommodate the employee's needs. However, the only non-driving positions are at the dispatch center and they are currently filled. As a last resort, the employer offers the employee unpaid leave until the nausea subsides. The employee accepts and the employer provides notice of the agreed-upon accommodation. The employer offers to notify the employee if and when an alternative position becomes available. After a month, a position opens up at the dispatch center, and the employer notifies the employee that she could be moved temporarily to this position. The employee is no longer feeling nauseous, declines the accommodation, and requests to return to her prior position without an accommodation. The employee is reinstated to her prior position. The employer met its obligation to engage in a cooperative dialogue by considering alternative positions, offering interim unpaid leave, and reaching out to the employee when a vacant position became available.



- An employee notifies an employer that she is five months pregnant and would like to work from home for the remainder of her pregnancy due to her lengthy commute and lower back pain, which is exacerbated by sitting in her car for long periods of time. No employee in her position has ever worked from home before. The employer requests that the employee obtain documentation from a medical provider confirming the need for the accommodation. The following week, the employee produces a note from her doctor saying that she cannot commute for the remainder of her pregnancy due to extreme lower back pain associated with her pregnancy. The employer sits down with the employee and has a conversation about the various tasks and functions the employee performs on a daily basis and determines what the employee will need to be able to access from home in order to do the work. The employer offers the employee the option of working from home for two weeks to determine if the employee will be able to adequately do the job from home. The employer confirms the accommodation in writing. After two weeks, the employer determines that the arrangement is workable because the employee is able to attend meetings remotely and generate the same work product she did in the office. After six weeks, the employee notifies the employer that her lower back pain has subsided and she no longer needs the accommodation. The employer requests a doctor's note confirming that the employee may return to work. Because this is disability-related, the employer can rightfully request a medical note from the employee. Upon receiving the required medical confirmation, the employee returns to the office the following week.
- An employee has exhibited poor performance for a period of nine months. During that time, the employer has issued two warnings that failure to improve her performance may result in termination. The employee now tells the employer that she is three months pregnant. The employer provides the employee with the employer's policy on requesting accommodations based on pregnancy and states, "Please let me know if there is anything we can do to help you improve your performance." The employee does not request an accommodation and her performance does not improve. The employer has no reason to believe that the pattern of poor performance relates to the pregnancy, particularly given that the poor performance predated the pregnancy. After providing the employee with a final warning, the employer terminates the employee for poor performance. The employer attempted to initiate a cooperative dialogue with the employee after learning of the employee's pregnancy, but the employee never requested an accommodation. Given the circumstances, and that the employee's poor performance predates the pregnancy, the employer's termination of the employee was not unlawful.
- An employee notifies an employer that she needs a lactation accommodation. The employee's job is mobile in nature, and she is unable to use the employer's designated lactation room in the company's headquarters while she is out in the field during the day as part of her essential job duties. The employer and employee engage in a cooperative dialogue and discuss providing portable privacy screens, and the employer agrees to allow the employee to pump in the employer-provided vehicle between site visits and provides sanitizing wipes and a cooler to store breast milk. The employee accepts these accommodations.
- An employee is returning to work in two weeks after leave for recovery from childbirth. The employee intends to express milk throughout the day, but is concerned about taking unpaid break time, considering the time it takes to get to the lactation room in addition to the time to express milk. The employee reaches out to her employer to see if there is space for a lactation room closer to her workstation. The employer is unable to identify a closer location for a lactation room. The employer, however, offers to construct a partition between the employee's workstation and the rest of the office to offer her privacy at her own desk if she would like to express milk there, which would enable the employee to express milk without taking a break. The employee accepts the offered accommodation and the employer provides notice to the employee that they have concluded the cooperative dialogue and reached an acceptable accommodation. By engaging in the cooperative dialogue, the employer was able to consider an accommodation that the employee had not realized was available.



6. ***Employer Defenses to a Claim of Failure to Provide a Pregnancy-Related Accommodation***

   a. <u>Undue Hardship</u>

In determining what constitutes an undue hardship, the NYCHRL specifies the following factors to be considered: (1) the nature and cost of the accommodation; (2) the overall financial resources of the facility or the facilities involved in the provision of the reasonable accommodation; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such accommodation upon the operation of the facility; (3) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees, the number, type, and location of its facilities; and (4) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative, or fiscal relationship of the facility or facilities in question to the covered entity.[98]

   b. <u>Essential Requisites of the Job</u>

An employer may raise the affirmative defense that, even with a reasonable accommodation, the employee would not be able to satisfy the essential requisites of their job.[99] This means that even when the accommodation does not create an undue hardship for the employer, if it would not enable the employee to eventually perform the basic duties and responsibilities required of the position, the employer may deny the accommodation. A temporary modification of duties, reassignment to another position, or period of leave that the employer is able to provide as a reasonable accommodation for pregnancy, childbirth, or a related medical condition does not constitute evidence that the employee cannot return to performing the essential requisites of their job when their need for a reasonable accommodation has ended.[100]

In raising the defense of inability to perform the essential requisites of the job, an employer must also show that there are no comparable positions available for which the employee is qualified that would accommodate the employee and that a lesser position or an unpaid leave of absence is either not acceptable to the employee or would pose an undue hardship.[101]

### D. Failure to Post or Provide Notice Regarding Pregnancy-Related Protections

The NYCHRL requires that employers provide all employees with written notice of their right to be free from discrimination in relation to pregnancy, childbirth, and related medical conditions.[102] The employer may comply with this requirement by: (1) conspicuously posting the notice in its place of business in an area accessible to employees, which may include on a company intranet; or (2) providing the notice to new employees at the start of employment and to all other employees who have not otherwise received notice.[103] Failure to comply with the notice requirement violates the NYCHRL. Employers may use Commission's Pregnancy and Employment Rights poster, available on the Commission's website, to provide notice to their employees. The notice should be available to employees at all times during their employment.[104]

Employers should develop a written policy to provide information to employees on the cooperative dialogue process as it relates to accommodations for pregnancy, childbirth, or related medical conditions.

---

[98] N.Y.C. Admin. Code § 8-102.
[99] *Id.* § 8-107(22)(a).
[100] 47 R.C.N.Y. § 2-09(e)(2).
[101] *See supra* p. 11 for a discussion on when an employer may offer an alternative position or unpaid leave as a reasonable accommodation.
[102] N.Y.C. Admin. Code § 8-107(22)(d).
[103] *Id.*; 47 R.C.N.Y. § 2-09(d).
[104] 47 R.C.N.Y. § 2-09(d).



The policy should include information about how employees may request accommodations and what a cooperative dialogue looks like. Such policies should be distributed to all employees. In addition, any time an employee notifies an employer about their pregnancy, the employer should provide that employee with a copy of the policy and remind them of the availability of accommodations.

### E. Failure to Have and Provide Policy Regarding Lactation Accommodations

The NYCHRL also requires that employers provide all new employees with a written policy stating that employees have a right to request a lactation accommodation and explain the process for making such a request.[105] The law requires that the employer's policy and process: (A) specify how an employee may submit a request for a lactation room; (B) require that the employer respond to a request for a lactation room as quickly as possible, but, under no circumstances, no later than five business days; (C) provide a procedure to follow when two or more employees need to use the lactation room at the same time; (D) explain that the employer shall provide reasonable break time for an employee to express breast milk pursuant to section 206-c of the labor law; and (E) state that if providing any aspects of the lactation room required by law would create an undue hardship for the employer, the employer shall engage in a cooperative dialogue with the employee.[106]

Employers must distribute the policy to all employees when they start their employment.[107] Employers should also give the policy to employees when they return from parental leave. Employers may comply with this requirement by customizing one of the model policies available on the Commission's website.[108]

## IV Discrimination Based on Sexual or Reproductive Health Decisions

### A. Disparate Treatment

It is a violation of the NYCHRL for an employer to treat a person less well because of their actual or perceived sexual or reproductive health decisions.[109] Subjecting an employee to adverse treatment because of their decision to receive, or not receive, services related to sexual or reproductive health, including when based on assumptions or stereotypes related to ability, behavior, or what is or is not healthy for an individual, violates the NYCHRL.[110]

**Examples of Violations**
- An employer repeatedly chastises an employee for pursuing in vitro fertilization treatment, which the employer says is not "natural."
- An employer repeatedly denigrates an employee who is undergoing treatment related to his infertility, joking about how the employee cannot get his wife pregnant.
- A supervisor avoids meetings with one of the employees on their team after learning the employee sought preventative treatment for the human immunodeficiency virus (HIV).
- An employer fires an employee after learning that the employee had an abortion.
- Multiple employees openly treat their coworker with disgust after learning that the coworker is receiving treatment for a sexually transmitted infection. The employer is aware of this conduct but does nothing to address it.
- An employee advises a supervisor that their partner is pregnant with their fourth child. The supervisor begins to routinely tell the employee they should have had a vasectomy and emails them links to doctors who specialize in the surgery.

---

[105] N.Y.C. Admin. Code § 8-107(22)(c); 47 R.C.N.Y. § 2-09(h)(4)(i).
[106] N.Y.C. Admin. Code § 8-107(22)(c)(i); 47 R.C.N.Y. § 2-09(h)(4)(i).
[107] N.Y.C. Admin. Code § 8-107(22)(c)(i); 47 R.C.N.Y. § 2-09(h)(4)(ii).
[108] N.Y.C. Comm'n on Human Rights, *Lactation Accommodations*, https://www1.nyc.gov/site/cchr/law/lactation.page (last visited May 12, 2021).
[109] N.Y.C. Admin. Code § 8-107(1); 47 R.C.N.Y. § 2-10(a)
[110] 47 R.C.N.Y. § 2-10(a).



**B. Discriminatory Policies or Practices Related to Sexual or Reproductive Health Decisions**

Employers may not have policies or practices that treat employees less well because of their actual or perceived sexual or reproductive health decisions.[111]

**Examples of Violations**
- A doctor's office requires all staff to undergo testing for HIV. An employee refuses to get tested and is fired for their decision.
- An employer requires new hires to sign a pledge that they have not used and will not use birth control.

## V    Retaliation

A covered entity may not retaliate against an individual because they: (1) oppose a discriminatory practice prohibited by the NYCHRL; (2) make a charge or file a complaint with the Commission, the employer, or any other agency; (3) testify, assist, or participate in an investigation, proceeding, or hearing related to an unlawful practice under the NYCHRL; or (4) request an accommodation in employment.[112] In order to establish a *prima facie* claim for retaliation, an individual must show: (1) that the individual engaged in protected activity; (2) the employer was aware of the activity; (3) that the individual suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action.[113] The purpose of the retaliation provision is to enable individuals to speak out against discrimination and to freely exercise their rights under the NYCHRL. Freedom from retaliation helps ensure that individuals needing accommodations will request them, and promotes a culture where people are less afraid to exercise their rights. When an individual opposes what they believe in good faith to be unlawful discrimination, it is illegal to retaliate against the individual, even if the underlying conduct they opposed is not ultimately determined to violate the NYCHRL.

In the context of employment, the act of requesting a reasonable accommodation based on pregnancy, childbirth, or a related medical condition, or engaging in a cooperative dialogue with an employer based on such request, is protected activity under the NYCHRL. An adverse employment action based on such activity is therefore retaliation under the NYCHRL. A worker needing an accommodation based on pregnancy, childbirth, or a related medical condition must be able to seek assistance and engage in the cooperative dialogue with employers without fear of adverse consequences for making the request.

*******

The Commission is dedicated to eradicating discrimination based on pregnancy, childbirth, related medical conditions, and sexual or reproductive health decisions in New York City. If you believe you have been subjected to unlawful discrimination, please contact the Commission at 311 or at (212) 416-0197 to file a complaint of discrimination with the Commission's Law Enforcement Bureau.

---

[111] *Id*. § 2-10(b).
[112] N.Y.C. Admin. Code § 8-107(7).
[113] *Id.*