

Headquarters
250 West 55th Street, 17th Floor
New York, NY 10019
tel: 212.430.5982

DC Office
815 16th Street NW, Suite 4162
Washington, DC 20005

Southern Office
2301 21st Ave. South, Suite 355
Nashville, TN 37212
tel: 615.915.2417

Colorado Office
303 E. 17th Ave., Suite 400
Denver, CO 80203

abetterbalance.org | info@abetterbalance.org

**VIA ECF**

January 4, 2024

The Honorable Analisa Torres
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

      Re:    *Diamin Bethea v. Winfield Security Corp.*, No. 23-cv-922 (AT)
              Letter Requesting Leave to File Attached *Amicus Curiae* Brief

Dear Judge Torres:

Pursuant to Your Honor's Individual Practices in Civil Cases, Section I.B., A Better Balance: The Work & Family Legal Center and seven additional organizations respectfully request leave to submit the accompanying *amicus curiae* brief in support of Plaintiff Diamin Bethea's Motion for Reconsideration, as to Ms. Bethea's New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL") claims (Counts II and III).[1]  A copy of the proposed *amicus* brief is attached hereto.  Plaintiff consents to the filing of the brief.

    A.    <u>Proposed *amici* are nonprofit organizations that serve low-wage pregnant and postpartum New Yorkers.</u>

**A Better Balance** is a national nonprofit legal services organization dedicated to work-family justice.  A Better Balance was instrumental in drafting and championing the passage of the pregnancy accommodation provisions of the NYSHRL and NYCHRL at issue in this case, as well as nearly all of the similar protections in 30 states and five municipalities across the country

---

[1] No party's counsel authored this brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting this brief; and no person other than the *amici curiae* or their counsel contributed money that was intended to fund preparing of submitting this brief.  None of the *amici curiae* is a nongovernmental entity with a parent corporation or a publicly held corporation that owns 10% or more of its stock.

(collectively known as "pregnant workers fairness acts" or "PWFAs").[2] *See, e.g.*, A BETTER BALANCE, STATE PREGNANT WORKERS FAIRNESS ACTS (Sept. 29, 2023), https://www.abetterbalance.org/resources/pregnant-worker-fairness-legislative-successes/.  In addition to its legislative advocacy on behalf of working people, A Better Balance provides free legal services to low-wage workers who have been denied reasonable accommodations related to pregnancy, childbirth, and lactation.

**Catholic Migration Services** ("CMS") is a not-for-profit legal services provider affiliated with Catholic Charities of Brooklyn and Queens and the Roman Catholic Diocese of Brooklyn, with offices in Brooklyn and Queens.  CMS provides free legal services and Know Your Rights education in the areas of immigration, housing, and employment law to low-income individuals regardless of race, religion, ethnicity, national origin, or immigration status.  CMS's employment law practice offers advice and representation to low-wage workers in a variety of areas, including violations of New York and federal wage and hour, anti-retaliation, discrimination, and paid leave laws.  In the experience of CMS advocates, low-wage and immigrant workers are also among the most vulnerable when it comes to workplace discrimination, denial of accommodations, and wrongful termination.

**The Gender Equality Law Center** ("GELC") is a nonprofit law firm and advocacy organization whose mission is to combat legal and systemic discrimination that limits economic opportunities for women, girls and LGBTQ + individuals.  One of the most important areas of GELC's work is combatting pregnancy and caregiver discrimination in the workplace.  Both these forms of discrimination are extremely prevalent when "female" workers become pregnant or need to care for children or elders.  The stereotypes associated with both roles routinely adversely impact female workers and their families both in the short term (such as if they are pushed out of work or fired based on outdated stereotypes about being pregnant or caregiving) and in the longer run, when a worker's lifetime earnings are permanently diminished because of being out of work at such a vulnerable time.  GELC actively supported the legislation under the New York State and New York City Pregnant Worker Fairness Acts and has worked to enforce these more progressive standards for years.  The outcome of how these laws are applied by the courts directly affects hundreds of workers that reach out to GELC every year.

**The Legal Aid Society** ("Legal Aid"), founded over 145 years ago, is the oldest and largest provider of legal assistance to low-income families and individuals in the United States.  Legal Aid operates trial offices in all five boroughs of New York City, providing comprehensive, holistic legal assistance.  Legal Aid's Employment Law Unit ("ELU") represents individuals—typically low-wage and unemployed workers—facing a range of employment law issues.  The majority of ELU's cases involve wage violations, workplace discrimination, sick, family, and medical leave, unemployment insurance, and labor trafficking.  Legal Aid also frequently represents individuals retaliated against for objecting to wage theft or discrimination.  In Legal Aid's experience, discrimination and retaliation against pregnant workers are rampant.  Frequently, pregnant workers Legal Aid sees are unable to obtain reasonable accommodations so that they can, for example, attend regularly scheduled medical appointments, seek emergency or

---

[2] A Better Balance also spearheaded the recent passage of the Federal Pregnant Workers Fairness Act, which went into effect in June 2023.

unplanned medical treatment, or sit in a chair.  Legal Aid has helped numerous pregnant workers obtain critical accommodations and represented many who have had to leave their job due to a failure to accommodate or who have been fired in retaliation for requesting an accommodation.

**Legal Services NYC** ("LSNYC"), a non-profit legal services provider, is the largest provider of free civil legal services in the country, with more than 650 staff serving over 100,000 low-income New Yorkers annually throughout the five boroughs.  LSNYC is dedicated to fighting poverty by providing legal services to help low-income New Yorkers meet basic needs, including for income and economic security.  As part of its advocacy for workers' rights, LSNYC provides advice and/or representation to pregnant workers who have been denied reasonable accommodations.

**Make the Road New York** ("MRNY") is a nonprofit, membership-based community organization that integrates adult and youth education, legal and survival services, and community and civic engagement, in a holistic approach to help low-income New Yorkers improve their lives and neighborhoods.  MRNY has over 200 staff, over 25,000 members, and five offices spread throughout New York City, Long Island, and Westchester County.  MRNY is at the forefront of numerous initiatives to analyze, improve, and expand civil and human rights for immigrant communities, including issues related to improving workplace justice conditions and strengthening protections for low-wage workers.  MRNY's Workplace Justice team represents hundreds of low-wage workers each year to enforce their rights under workplace laws.  MRNY represents workers to recover unpaid wages and benefits they were denied by exploitative employers and to remedy unlawful workplace discrimination and terminations. MRNY has developed expertise in enforcement mechanisms and legislative reform to enhance protection for workers under city, state and federal law.  MRNY's experience has shown the overwhelming need for protection of pregnant workers to remedy stark workplace power imbalances that impinge upon civil and human rights as well as public health.

**TakeRoot Justice** ("TakeRoot") is a New York City based nonprofit committed to dismantling racial, economic, and social oppression.  TakeRoot's Workers' Rights team uses legal, policy and legislative advocacy to support workers as they assert their rights in the workplace.  The Workers' Rights team represents low-wage workers and partners with grassroots worker centers, advocacy groups, and their members to combat workplace violations such as wage theft, discrimination, sexual harassment, and retaliation.  TakeRoot is committed to ensuring that labor and anti-discrimination laws are enforced and workers are able to lead lives of strength and dignity.  TakeRoot seeks to enforce these laws by filing claims at the New York City Human Rights Commission, the New York State Division of Human Rights, and the Equal Employment Opportunity Commission, as well as in state and federal court.  In doing so, TakeRoot represents low-wage workers who have been denied reasonable accommodations related to pregnancy, childbirth, and lactation.  TakeRoot is deeply dedicated to ensuring that the New York City Human Rights Law and the New York State Human Rights Law are correctly interpreted and enforced consistent with the laws' intent to protect workers and, as such, submit this *amicus* brief.

**The Worker Justice Center of New York** ("WJCNY") is a non-profit legal services organization that advocates for workers throughout New York State through legal representation,

community empowerment, and advocacy for institutional change.  WJCNY provides free legal assistance in matters affecting the workplace rights of agricultural and other low-wage workers, including pregnant workers.

- B. The proposed *amicus* brief would aid this Court in addressing the key questions at issue in the motion for reconsideration.

"There is no governing standard, rule or statute prescrib[ing] the procedure for obtaining leave to file an amicus brief in the district court."  *Automobile Club of N.Y., Inc. v. Port Authority of N.Y. and N.J.*, No. 11-cv-6746 (RJH), 2011 WL 5865296, at *1 (S.D.N.Y. Nov. 22, 2011) (internal quotation marks omitted).  "District courts have broad discretion to permit . . . an appearance as amicus curiae in a case."  *In GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 265 (S.D.N.Y. 2012).  "The usual rationale for amicus curiae submissions is that they are of aid to the court."  *Automobile Club*, 2011 WL 5865296, at *1.  "An *amicus* brief should normally be allowed when a party is not represented competently . . . or when the *amicus* has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide."  *Id.* at *2 (citations omitted).

*Amici*'s proposed *amicus curiae* brief would help the Court by explaining the purpose and legislative history of the pregnancy accommodation provisions of the NYSHRL and NYCHRL, N.Y. Exec. Law § 296(3)(a) and N.Y.C. Admin. Code § 8-107(22)(a), at issue in this case. Dkt. 1, ¶¶ 34–42; Dkt. 37, at 11–13; Dkt. 44-1, at 7–10.  The New York State Legislature and New York City Council enacted the pregnancy accommodation provisions amending their respective Human Rights Laws specifically to fill the gap left open by Title VII—that is, to ensure that pregnant New Yorkers would enjoy an affirmative right to reasonable accommodations *regardless* of whether their employer accommodated other non-pregnant workers.

The proposed *amicus* brief begins by situating the New York protections within a broader wave of state and city pregnant workers fairness acts, which lawmakers deliberately modeled after the Americans with Disabilities Act's accommodation framework.  The brief then traces the specific legislative history of the pregnancy accommodation provisions of the NYSHRL and NYCHRL and lays out the correct legal standard for such claims.  It explains why the Court's application of the Title VII standard was clear error—overlooking both binding Second Circuit case law and the central purpose of the pregnancy accommodation provisions—and warrants correction.[3] *Liberty Media Corp. v. Vivendi Universal, S.A.*, 861 F. Supp. 2d 262, 265 (S.D.N.Y. 2012) ("A motion for reconsideration is appropriate where the moving party can point to controlling decisions . . . that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court[;] . . . [or] to correct a clear error or prevent manifest injustice.") (cleaned up); *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (same).

Consistent with their work championing the rights of pregnant and postpartum New Yorkers, *amici* are invested in the proper interpretation and enforcement of the pregnancy accommodation provisions of the NYSHRL and NYCHRL at issue in this case.  *Amici* share a special interest in

---

[3] *Amici* take no position on Plaintiff's Title VII claim (Count I).

4

ensuring that courts apply the proper legal standard to such claims, in contrast to the legal standard applicable to Title VII pregnancy claims.  Application of the correct standard is necessary to ensure pregnant New Yorkers enjoy the full and robust protections that state and city lawmakers intended.

Accordingly, *amici* respectfully request that this Court grant leave to file an *amicus curiae* brief, which is attached.

Respectfully submitted,


s/ Dana Bolger
Dana Bolger (dbolger@abetterbalance.org)
Katherine Greenberg (kgreenberg@abetterbalance.org)
Counsel for Proposed *Amici Curiae*