**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

DIAMIN BETHEA,

                Plaintiff,

       v.

WINFIELD SECURITY CORPORATION,

            Defendant.

---

Civil No. 23-cv-922 (AT)

 

**BRIEF *AMICUS CURIAE*
BY A BETTER BALANCE: THE WORK & FAMILY LEGAL CENTER
AND SEVEN ADDITIONAL ORGANIZATIONS
IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION**

A BETTER BALANCE

Dana Bolger
Katherine Greenberg
250 West 55th Street
17th Floor
New York, NY 10019
Phone: 516-614-3255
dbolger@abetterbalance.org
kgreenberg@abetterbalance.org

*Counsel for Proposed Amici Curiae*

Dated: January 4, 2024
     New York, NY

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ...................................................................................................... iii

**INTEREST OF *AMICI*** ............................................................................................................ v

**INTRODUCTION** ...................................................................................................................... 1

**ARGUMENT** .............................................................................................................................. 3

    I.    State and local PWFAs, like those amending the NYSRHL and NYCHRL, were enacted to fix gaps in federal law. ................................................................................................ 3

    II.   The NYSHRL does not require a plaintiff to allege that their employer accommodated others similar in their ability or inability to work. ...................................................... 4

        *A.    The New York State legislature amended the NYSHRL specifically to ensure that pregnant workers would enjoy an affirmative right to reasonable accommodations, regardless of whether their co-workers are accommodated.* ................................................... 5

        *B.    The legal standard for NYSHRL accommodation claims mirrors the standard for Americans with Disabilities Act ("ADA") accommodation claims.* ....................................... 8

    III.  The NYCHRL does not require a plaintiff to allege differential treatment because of pregnancy. ................................................................................................................. 11

        *A.    The New York City Council amended the NYCHRL to ensure that pregnant workers enjoy an affirmative right to reasonable accommodation, regardless of how other employees are treated.* ......................................................................................... 11

        *B.    The legal standard for a prima facie case under the NYC PWFA requires a plaintiff to allege only that she requested an accommodation and her request was denied.* ................. 12

**CONCLUSION** ....................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127 (2d Cir. 2008) ...................................................... 10

*Coronado v. Weill Cornell Med. Coll.*, 114 N.Y.S.3d 193 (Sup. Ct. 2019) ............................. 5, 13

*Doe v. Bell*, 754 N.Y.S.2d 846 (Sup. Ct. 2003) ............................................................................ 4

*Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181 (2d Cir. 2006) ............................................ 9, 10

*Lanza v. Whole Foods Mkt. Grp., Inc.*, No. 154534/2022, 2023 N.Y. Misc. Lexis 97 (Sup. Ct. Jan. 6, 2023) ......................................................................................................... 5, 10, 12

*Lawtone-Bowles v. City of New York*, No. 17-cv-8024, 2019 WL 652593 (S.D.N.Y. Feb. 15, 2019) ............................................................................................................................... 9

*Legg v. Ulster Cnty.*, 820 F.3d 67 (2d Cir. 2016) ........................................................................ 1

*Lenzi v. Systemax, Inc.*, 944 F.3d 97 (2d Cir. 2019) .................................................................... 9

*Liberty Media Corp. v. Vivendi Universal, S.A.*, 861 F. Supp. 2d 262 (S.D.N.Y. 2012) .............. 2

*Lin v. Amazon.com, Inc.*, No. 21-cv-6203 (KAM) (MMH), 2023 WL 5720063 (E.D.N.Y. Sept. 5, 2023) ............................................................................................................................. 10

*McMillan v. City of New York*, 711 F.3d 120 (2d Cir. 2013) ...................................................... 10

*Nieblas-Love v. New York City Housing Auth.*, 165 F. Supp. 3d 51 (S.D.N.Y. 2016) .................. 9

*Parker v. Columbia Pictures Indus.*, 204 F.3d 326 (2d Cir. 2000) ............................................... 9

*Rodal v. Anesthesia Grp. Of Onondaga, P.C.*, 369 F.3d 113 (2d Cir. 2004) .............................. 10

*Shrader v. CSX Transp., Inc.*, 70 F.3d 255 (2d Cir. 1995) ........................................................... 2

*Singhal v. Doughnut Plant, Inc.*, No. 20-cv-3295 (ALC), 2022 WL 976885 (S.D.N.Y. Mar. 31, 2022) ............................................................................................................................. 13

*Tafolla v. Heilig*, 80 F. 4th 111 (2d Cir. 2023) .......................................................................... 10

*Xiang v. Eagle Enters., LLC*, No. 19-cv-1752 (PAE), 2020 WL 248941 (S.D.N.Y. Jan. 16, 2020) ........................................................................................................................................ 12

*Young v. United Parcel Servs.*, 575 U.S. 206 (2015) ..................................................................... 1

**Statutes**

N.Y. Exec. Law § 290 ................................................................................................................. 8

N.Y. Exec. Law § 295 ................................................................................................................. 8

N.Y. Exec. Law § 296(1) ......................................................................................................... 9, 10

N.Y. Exec. Law § 296(3) ........................................................................... 4, 9, 10

N.Y.C. Admin. Code § 8-107 ........................................................................... 11

## Other Authorities

A BETTER BALANCE, PREGNANT & JOBLESS: THIRTY-SEVEN YEARS AFTER PREGNANCY
DISCRIMINATION ACT, PREGNANT WOMEN STILL CHOOSE BETWEEN A PAYCHECK AND A
HEALTHY PREGNANCY (Oct. 2015) ........................................................... 6

A BETTER BALANCE, STATE PREGNANT WORKERS FAIRNESS LAWS (Sept. 29, 2023) ................... 3

A4272, 2015–2016 Sess. (N.Y. 2015) ........................................................... 8

APRIL J. ANDERSON, CONG. RSCH. SERV., R46821, PREGNANCY & LABOR: AN OVERVIEW OF
FEDERAL LAWS PROTECTING PREGNANT WORKERS (2021) ..................................... 3, 4

Comm. Rep. Gov't Affairs Div., N.Y.C. Council Comm. C.R. on Civil Rights (June 25, 2013) 12

Deborah Widiss, *Pregnant Workers Fairness Acts: Advancing a Progressive Policy in Both Red
and Blue America*, 22 NEV. L.J. 1131 (2022) ........................................... 4

DINA BAKST, ELIZABETH GEDMARK & SARAH BRAFMAN, A BETTER BALANCE, LONG OVERDUE
(2019) ............................................................................... 3, 5

Dina Bakst, Opinion, *Pregnant, and Pushed Out of a Job*, N.Y. TIMES, Jan. 30, 2012 ............... 6

Int. 974-A (N.Y.C. 2013) ........................................................................... 12

N.Y. DIV. HUMAN RIGHTS, GUIDANCE ON PREGNANCY DISCRIMINATION & REASONABLE
ACCOMMODATION OF PREGNANCY-RELATED CONDITIONS FOR EMPLOYERS IN NEW YORK
STATE (2015) ........................................................................... 8

N.Y.C. BAR, REPORT ON LEGIS. BY COMM. ON SEX & LAW (Apr. 2015) ........................... 5, 6, 9

N.Y.C. COMM'N HUMAN RIGHTS, LEGAL ENFORCEMENT GUIDANCE (July 2021) ................... 11, 12

NAT'L WOMEN'S LAW CTR. & A BETTER BALANCE, IT SHOULDN'T BE A HEAVY LIFT: FAIR
TREATMENT FOR PREGNANT WORKERS (June 2013) ........................................... 6, 7

Press Release, N.Y.S. Senate Democratic Conf., Sen. Liz Krueger, Democratic Conf. Hold
Roundtable on Econ. Issues Facing New York State Women (May 15, 2012) ........................... 6

S8, 2015–16 Sess. (N.Y. 2015) ........................................................................... 5, 7

Shirley Lin, *Bargaining for Integration*, 96 N.Y.U. L. REV. 1826 (2021) ........................... 4

Wendy Chavkin, *Congress Should Help Pregnant Workers Stay Healthy and on the Job*, THE
HILL (June 4, 2015) ........................................................................... 7

## INTEREST OF *AMICI*

*Amici* are nonprofit organizations committed to protecting the rights of low-wage pregnant and postpartum New Yorkers. The pregnancy accommodation provisions of the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL") at issue in this case are critical to ensuring that pregnant workers can obtain the reasonable accommodations they need to work without compromising their health; avoid the economic precarity that results from being pushed out of the workforce when refused accommodations; and enjoy a strong sense of dignity and belonging in the workforce, by making clear that pregnancy and work need not be incompatible, reducing stigma and stereotyping, and reinscribing pregnancy as an ordinary, routine part of employment.

As organizations that serve low-wage pregnant and postpartum New Yorkers, *amici* are invested in the proper interpretation and enforcement of the pregnancy accommodation provisions of the NYSHRL and NYCHRL. *Amici* share a special interest in ensuring that courts apply the proper legal standard to such claims, in contrast to the more burdensome legal standard applicable to Title VII pregnancy claims, so that workers may enjoy the full and robust protections that state and local lawmakers intended.

**A Better Balance** is a national nonprofit legal services organization dedicated to work-family justice. A Better Balance uses the power of the law to advance justice for pregnant, lactating, and postpartum workers, so they can care for themselves and their loved ones without jeopardizing their economic security. A Better Balance was instrumental in drafting and championing the passage of the pregnancy accommodation provisions of the NYSHRL and NYCHRL at issue in this case, as well as nearly all of the similar protections in 30 states and five municipalities across the country (collectively known as "Pregnant Workers Fairness Acts" or

"PWFAs").[1]  *See, e.g.*, A BETTER BALANCE, STATE PREGNANT WORKERS FAIRNESS LAWS (Sept. 29, 2023), https://www.abetterbalance.org/resources/pregnant-worker-fairness-legislative-successes/.  A Better Balance fought for passage of these laws to ensure that pregnant workers would enjoy an affirmative right to reasonable accommodations *regardless* of whether their employers accommodated other similarly-situated, non-pregnant workers, unlike under Title VII. In addition to its legislative advocacy on behalf of working people, A Better Balance provides free legal services to low-wage workers who have been denied reasonable accommodations related to pregnancy, childbirth, and lactation, including representing such workers in federal court.

**Catholic Migration Services** ("CMS") is a not-for-profit legal services provider affiliated with Catholic Charities of Brooklyn and Queens and the Roman Catholic Diocese of Brooklyn, with offices in Brooklyn and Queens.  CMS provides free legal services and Know Your Rights education in the areas of immigration, housing, and employment law to low-income individuals regardless of race, religion, ethnicity, national origin, or immigration status.  CMS's employment law practice offers advice and representation to low-wage workers in a variety of areas, including violations of New York and federal wage and hour, anti-retaliation, discrimination, and paid leave laws.  In the experience of CMS advocates, low-wage and immigrant workers are among the most vulnerable when it comes to workplace discrimination, denial of accommodations, and wrongful termination.

**The Gender Equality Law Center** ("GELC") is a nonprofit law firm and advocacy organization whose mission is to combat legal and systemic discrimination that limits economic opportunities for women, girls and LGBTQ + individuals.  One of the most important areas of

---

[1] A Better Balance also spearheaded the recent passage of the Federal Pregnant Workers Fairness Act, which went into effect in June 2023.

GELC's work is combatting pregnancy and caregiver discrimination in the workplace. Both these forms of discrimination are extremely prevalent when "female" workers become pregnant or need to care for children or elders. The stereotypes associated with both roles routinely adversely impact female workers and their families both in the short term (such as if they are pushed out of work or fired based on outdated stereotypes about being pregnant or caregiving) and in the longer run, when a worker's lifetime earnings are permanently diminished because of being out of work at such a vulnerable time. GELC actively supported the legislation under the New York State and New York City Pregnant Worker Fairness Acts and has worked to enforce these more progressive standards for years. The outcome of how these laws are applied by the courts directly affects hundreds of workers that reach out to GELC organization every year.

**The Legal Aid Society** ("Legal Aid"), founded over 145 years ago, is the oldest and largest provider of legal assistance to low-income families and individuals in the United States. Legal Aid operates trial offices in all five boroughs of New York City, providing comprehensive, holistic legal assistance. Legal Aid's Employment Law Unit ("ELU") represents individuals— typically low-wage and unemployed workers—facing a range of employment law issues. The majority of ELU's cases involve wage violations, workplace discrimination, sick, family, and medical leave, unemployment insurance, and labor trafficking. Legal Aid also frequently represents individuals retaliated against for objecting to wage theft or discrimination. In Legal Aid's experience, discrimination and retaliation against pregnant workers are rampant. Frequently, the pregnant workers Legal Aid sees are unable to obtain reasonable accommodations so that they can, for example, attend regularly scheduled medical appointments, seek emergency or unplanned medical treatment, or sit in a chair. Legal Aid has helped numerous pregnant workers obtain critical accommodations and represented many who have had

to leave their job due to a failure to accommodate or who have been fired in retaliation for requesting an accommodation.

**Legal Services NYC** ("LSNYC"), a non-profit legal services provider, is the largest provider of free civil legal services in the country, with more than 650 staff serving over 100,000 low-income New Yorkers annually throughout the five boroughs. LSNYC is dedicated to fighting poverty by providing legal services to help low-income New Yorkers meet basic needs, including for income and economic security. As part of its advocacy for workers' rights, LSNYC provides advice and/or representation to pregnant workers who have been denied reasonable accommodations.

**Make the Road New York** ("MRNY") is a nonprofit, membership-based community organization that integrates adult and youth education, legal and survival services, and community and civic engagement, in a holistic approach to help low-income New Yorkers improve their lives and neighborhoods. MRNY has over 200 staff, over 25,000 members, and five offices spread throughout New York City, Long Island, and Westchester County. MRNY is at the forefront of numerous initiatives to analyze, improve, and expand civil and human rights for immigrant communities, including issues related to improving workplace justice conditions and strengthening protections for low-wage workers. MRNY's Workplace Justice team represents hundreds of low-wage workers each year to enforce their rights under workplace laws. MRNY represents workers to recover unpaid wages and benefits they were denied by exploitative employers and to remedy unlawful workplace discrimination and terminations. MRNY has developed expertise in enforcement mechanisms and legislative reform to enhance protection for workers under city, state and federal law. MRNY's experience has

shown the overwhelming need for protection of pregnant workers to remedy stark workplace power imbalances that impinge upon civil and human rights as well as public health.

**TakeRoot Justice** ("TakeRoot") is a New York City based nonprofit committed to dismantling racial, economic, and social oppression. TakeRoot's Workers' Rights team uses legal, policy, and legislative advocacy to support workers as they assert their rights in the workplace. The Workers' Rights team represents low-wage workers and partners with grassroots worker centers, advocacy groups, and their members to combat workplace violations such as wage theft, discrimination, sexual harassment, and retaliation. TakeRoot is committed to ensuring that labor and anti-discrimination laws are enforced and workers are able to lead lives of strength and dignity. TakeRoot seeks to enforce these laws by filing claims at the New York City Human Rights Commission, the New York State Division of Human Rights, the Equal Employment Opportunity Commission, as well as in state and federal court. In doing so, TakeRoot represents low-wage workers who have been denied reasonable accommodations related to pregnancy, childbirth, and lactation. TakeRoot is deeply dedicated to ensuring that the New York City Human Rights Law and the New York State Human Rights Law are correctly interpreted and enforced consistent with the laws' intent to protect workers.

**The Worker Justice Center of New York** ("WJCNY") is a non-profit legal services organization that advocates for workers throughout New York State through legal representation, community empowerment, and advocacy for institutional change. WJCNY provides free legal assistance in matters affecting the workplace rights of agricultural and other low-wage workers, including pregnant workers.

## INTRODUCTION

Under Title VII, workers alleging that their employer failed to accommodate their pregnancy-related health needs generally must plead that their employers "did accommodate others 'similar in their ability or inability to work.'" *Legg v. Ulster Cnty.*, 820 F.3d 67, 73 (2d Cir. 2016) (quoting *Young v. United Parcel Servs.*, 575 U.S. 206, 229 (2015)). Not so for workers alleging failure to accommodate under the New York State and New York City Human Rights Laws ("NYSHRL" and "NYCHRL," respectively).

In 2013, the New York City Council amended the NYCHRL to require employers to reasonably accommodate pregnancy, childbirth, and related conditions, regardless of whether the employer accommodated other non-pregnant employees. In 2015, the New York State legislature followed suit, amending its NYSHRL to establish the same. These amendments to the Human Rights Laws are known as the State and City Pregnant Workers Fairness Acts, or "NYS PWFA" and "NYC PWFA," respectively. To make out a *prima facie* case under the NYS PWFA and NYC PWFA provisions of the Human Rights Laws, a plaintiff need not allege that her employer accommodated others similar in their ability or inability to work—unlike under Title VII. Rather, NYSHRL and NYCHRL accommodation claims merely require a plaintiff to allege, in relevant part, that she requested a reasonable accommodation related to her pregnancy and that her employer failed to accommodate her.

Here, the Court applied the more burdensome Title VII standard to Plaintiff Diamin Bethea's state and city claims, erroneously requiring her to allege, for the purposes of her NYSHRL claim, that her employer "accommodate[d] others similar in their ability or inability to work" and, for her NYCHRL claim, that her employer engaged in "differential treatment because of her pregnancy." Dkt. 43, at 7–8. This was clear error, overlooking both binding Second

Circuit case law and the central purpose of the PWFAs. It risks confusing future litigants and decisionmakers about the proper legal standard applicable to NYS and NYC PWFA claims. It warrants correction.

Amici write in support of Ms. Bethea's motion for reconsideration of the dismissal of her NYS and NYC PWFA claims (Counts II and III of her complaint).[2] In Section I, amici provide an overview of the national movement to pass state PWFAs, explaining that such statutes were intentionally patterned after the Americans with Disabilities Act's familiar accommodation framework. In Section II, amici trace the specific legislative history of the NYS PWFA, describing the gap in the law that legislators enacted it to fix and its goal of ensuring that pregnant New Yorkers would no longer need to choose between their jobs and their health. Amici then lay out the legal standard for accommodation claims under the NYSHRL. Section III traces the legislative history of the NYC PWFA and articulates the legal standard applicable to such claims.

Amici urge this Court to amend its Order and reinstate Counts II and III of Ms. Bethea's complaint. See Liberty Media Corp. v. Vivendi Universal, S.A., 861 F. Supp. 2d 262, 265 (S.D.N.Y. 2012) ("A motion for reconsideration is appropriate where the moving party can point to controlling decisions . . . that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court[;] . . . [or] to correct a clear error or prevent manifest injustice.") (cleaned up); Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995) (same).

---

[2] Amici take no position on Ms. Bethea's Title VII discrimination claim (Count I of the complaint). Dkt. 1.

**ARGUMENT**

## I. State and local PWFAs, like those amending the NYSRHL and NYCHRL, were enacted to fix gaps in federal law.

In the last decade, lawmakers have passed some 30 state and five local PWFAs, like New York State's and New York City's (described in more detail in Sections IIA and IIIA), to fill in the gaps left open by Title VII—that is, to ensure that pregnant workers' right to reasonable accommodations need not depend on whether their employer accommodated other employees similar in their ability or inability to work. *See, e.g.*, APRIL J. ANDERSON, CONG. RSCH. SERV., R46821, PREGNANCY & LABOR: AN OVERVIEW OF FEDERAL LAWS PROTECTING PREGNANT WORKERS 20–21 (2021) (explaining that Title VII's "narrow focus on nondiscrimination"— which only requires "[t]reating pregnant women the same as other workers"—fails to "help pregnant workers retain employment" and noting that, in response, "states have passed more protective statutes requiring accommodations for pregnant workers"); *see also* A BETTER BALANCE, STATE PREGNANT WORKERS FAIRNESS LAWS (Sept. 29, 2023), https://www.abetterbalance.org/resources/pregnant-worker-fairness-legislative-successes/ (providing an overview of each state and local PWFA). As described below, these laws were intended to safeguard pregnant workers' job security, financial stability, and health, by ensuring they could get the accommodations they needed to continue working safely.

Deliberately modeled after the Americans with Disabilities Act's ("ADA") accommodation framework, the PWFAs require employers to provide reasonable accommodations to pregnant workers (rather than workers with disabilities), unless it would be an undue hardship to do so. *See, e.g.*, DINA BAKST, ELIZABETH GEDMARK & SARAH BRAFMAN, A BETTER BALANCE, LONG OVERDUE 6 (2019), https://www.abetterbalance.org/wp-

content/uploads/2019/05/Long-Overdue.pdf (explaining that the PWFAs "track the familiar [ADA] accommodation framework"); Deborah Widiss, *Pregnant Workers Fairness Acts: Advancing a Progressive Policy in Both Red and Blue America*, 22 NEV. L.J. 1131, 1144 (2022) (explaining that the PWFAs "borrow[] from disability law"); ANDERSON, *supra*, at 20 (describing how PWFAs "are more closely modeled on an accommodation standard for disability law"). As one legal scholar explains, these state-law protections effectively "transition[] pregnancy accommodations from [Title VII's] parity framework to the ADA's accommodations framework." Shirley Lin, *Bargaining for Integration*, 96 N.Y.U. L. REV. 1826, 1873 (2021). Under such an accommodation regime, it is the employer's failure to accommodate that violates the law—regardless of how the employer treated other employees.

## II. The NYSHRL does not require a plaintiff to allege that their employer accommodated others similar in their ability or inability to work.

This Court erred in requiring Ms. Bethea to allege, for the purposes of her NYSHRL claim, that her employer "did accommodate others similar in their ability or inability to work." Dkt. 43, at 7. Unlike Title VII, the NYSHRL affords employees an affirmative right to reasonable accommodations for pregnancy-related conditions—regardless of whether the employer accommodates others similar in their ability or inability to work. N.Y. Exec. Law § 296(3)(a) ("It shall be an unlawful discriminatory practice for an employer . . . to refuse to provide reasonable accommodations to the known disabilities, or pregnancy-related conditions, of an employee."). That is so because the NYSHRL "is not simply a prohibition on discriminatory actions"; it also, "like federal disability discrimination statutes, requires covered entities to provide . . . reasonable accommodations *not offered* to other persons." *Doe v. Bell*, 754 N.Y.S.2d 846, 851 (Sup. Ct. 2003) (emphasis added); *see also Lanza v. Whole Foods Mkt.*

*Grp., Inc.*, No. 154534/2022, 2023 N.Y. Misc. Lexis 97, at *4 (Sup. Ct. Jan. 6, 2023) ("Instead of requiring employees who are pregnant to demonstrate that their employer treated similarly situated employees *without* pregnancies differently, [the NYSHRL and NYCHRL] instruct that a plaintiff may establish a pregnancy discrimination claim by pointing to reasonable accommodations that the employer denied."); *Coronado v. Weill Cornell Med. Coll.*, 114 N.Y.S.3d 193, 199 (Sup. Ct. 2019) ("The NYSHRL . . . prohibits defendants from refusing to provide plaintiff a reasonable accommodation for conditions related to her pregnancy.").

### A. The New York State legislature amended the NYSHRL specifically to ensure that pregnant workers would enjoy an affirmative right to reasonable accommodations, regardless of whether their co-workers are accommodated.

In 2015, the New York State legislature passed the NYS PWFA into law, amending the NYSHRL to add "pregnancy-related conditions" to the list of those conditions (like disability) that employers must reasonably accommodate. The legislature did so expressly to fill a gap in federal law, which, under Title VII (as amended by the Pregnancy Discrimination Act of 1978), merely required employers to accommodate pregnant employees "the same . . . as other non-pregnant persons similar in their ability or inability to work,"[3] S8, 2015–16 Sess. (N.Y. 2015), https://www.nysenate.gov/legislation/bills/2015/2015-s8—causing many pregnant workers to be unable to get accommodations at all. LONG OVERDUE, *supra*, at 13–19 (documenting pregnant workers' inability to obtain accommodations under federal law); N.Y.C. BAR, REPORT ON LEGIS. BY COMM. ON SEX & LAW 3 (Apr. 2015), https://www2.nycbar.org/pdf/report/uploads/20072260-WorkplaceAccomodationsforPregnantWomen.pdf (supporting passage of the NYS PWFA

---

[3] In December 2022, Congress enacted a new federal law—called the Federal Pregnant Workers Fairness Act—that, like the NYSHRL, requires employers to affirmatively "make reasonable accommodations to the known limitations related to pregnancy," regardless of whether the employer accommodates non-pregnant employees. 42 U.S.C. § 2000gg-1(1). This law was not yet in effect at the time Ms. Bethea requested her accommodations.

because Title VII's "narrow comparative rights framework makes it difficult, if not impossible, for pregnant women to find comparators who are similar in their 'ability or inability to work'").

The NYS PWFA was introduced in 2012 to address this problem. *See, e.g.*, Dina Bakst, Opinion, *Pregnant, and Pushed Out of a Job*, N.Y. TIMES, Jan. 30, 2012, at A25; Press Release, N.Y.S. Senate Democratic Conf., Sen. Liz Krueger, Democratic Conf. Hold Roundtable on Econ. Issues Facing New York State Women (May 15, 2012), https://www.scribd.com/document/93813532/Senator-Liz-Krueger-Democratic-Conference-Hold-Roundtable-On-Economic-Issues-Facing-New-York-State-Women; N.Y.C. BAR, *supra*, at 1. Too often, advocates explained, employers lawfully denied pregnant workers—particularly those working low-wage, physically-demanding or hazardous jobs, such as in security services—modest accommodations, "such as permission to sit during a long shift, an extra restroom break, or temporary relief from heavy lifting to avoid pregnancy complications." A BETTER BALANCE, PREGNANT & JOBLESS: THIRTY-SEVEN YEARS AFTER PREGNANCY DISCRIMINATION ACT, PREGNANT WOMEN STILL CHOOSE BETWEEN A PAYCHECK AND A HEALTHY PREGNANCY 3 (Oct. 2015), https://www.abetterbalance.org/wp-content/uploads/2017/01/PregnantandJobless.pdf.

As a result, workers who otherwise would have been able to continue working *with* accommodations were forced onto unpaid leave they could not afford—or even fired—losing critical income and health insurance at the very moment they needed it the most. *See, e.g.*, NAT'L WOMEN'S LAW CTR. & A BETTER BALANCE, IT SHOULDN'T BE A HEAVY LIFT: FAIR TREATMENT FOR PREGNANT WORKERS 9–11 (June 2013), https://www.abetterbalance.org/resources/it-shouldnt-be-a-heavy-lift/. Unable to afford rent, some became homeless. *See, e.g.*, PREGNANT & JOBLESS, *supra*, at 21. Still other workers, afraid of losing their jobs, refrained from requesting accommodations at all, causing them to

suffer serious health consequences—including preeclampsia, preterm birth, and miscarriage—as they continued to work without the accommodations they needed.  *See, e.g.*, IT SHOULDN'T BE A HEAVY LIFT, *supra*, at 12 (describing the significant health consequences for workers denied pregnancy accommodations); Bakst, *Pregnant*, *supra*, at A25 (explaining that, without clear legal protections, "pregnant women are reluctant to ask for the accommodations they need for their own health" and the health of their pregnancy); Wendy Chavkin, M.D., *Congress Should Help Pregnant Workers Stay Healthy and on the Job*, THE HILL (June 4, 2015), https://thehill.com/blogs/congress-blog/healthcare/243899-congress-should-help-pregnant-workers-stay-healthy-and-on-the/ (describing pregnant retail worker who landed in the emergency room due to severe dehydration after her boss refused her the accommodation of drinking water).  Advocates championed the proposed NYS PWFA as a promising solution to protect pregnant workers' job security, financial stability, health, and dignity.  *See, e.g.*, Bakst, *Pregnant*, *supra*, at A25; IT SHOULDN'T BE A HEAVY LIFT, *supra*, at 21.

The New York State legislature heard the advocates loud and clear.  In passing the NYS PWFA, the legislature expressly recognized that existing federal laws like Title VII were insufficient to meet the needs of pregnant New Yorkers because they "provid[ed] legal protection only to the extent a pregnant woman is able to work at full capacity, uninterrupted by the effects of pregnancy."  S8, 2015–16 Sess. (N.Y. 2015), https://www.nysenate.gov/legislation/bills/2015/2015-s8.  That left pregnant workers who "require modest adjustments on the job for conditions related to pregnancy and childbirth in order to stay healthy and keep working" out of luck.  *Id.*  Thus, "[i]n order to adequately protect the rights of pregnant workers," the legislature determined, "it is necessary to create a specific protection in New York State statute requiring employers to provide a reasonable

accommodation for pregnancy-related conditions." *Id.*; *see also* A4272, 2015–2016 Sess. (N.Y. 2015),

https://assembly.state.ny.us/leg/?default_fld=&leg_video=&bn=A04272&term=2015&Memo=Y (explaining that "it is necessary to create a specific protection in the Human Rights Law requiring employers to provide a reasonable accommodation for pregnancy-related conditions" because "recent Court decisions have contributed to the already considerable confusion as to the availability and extent of this protection").

Shortly after the NYS PWFA was passed, the New York State Division of Human Rights—the agency charged with interpreting and enforcing the NYSHRL, *see* N.Y. Exec. Law §§ 290(3), 295—issued guidance succinctly summarizing the rationale for the law: "[T]he Human Rights Law was amended by the Laws of 2015 . . . to make explicit that employers are required to provide reasonable accommodation of pregnancy-related conditions." N.Y. DIV. HUMAN RIGHTS, GUIDANCE ON PREGNANCY DISCRIMINATION & REASONABLE ACCOMMODATION OF PREGNANCY-RELATED CONDITIONS FOR EMPLOYERS IN NEW YORK STATE 1 (2015).

In sum, New York lawmakers were clear that they amended the NYSHRL to address the inadequate accommodation protections afforded by Title VII. This Court's Order requiring Ms. Bethea still to hew to Title VII's legal standard, Dkt. 43, at 6–7, would frustrate that legislative intent and undermine the central goal in passing the NYS PWFA.

**B. The legal standard for NYSHRL accommodation claims mirrors the standard for ADA accommodation claims.**

The NYS PWFA expanded employers' reasonable accommodation obligations by inserting the term "pregnancy-related conditions" into the very same statutory provision of the NYSHRL that already required employers to accommodate employees' disabilities.

Accordingly, the NYSHRL, as amended, states that it is unlawful for an employer "to refuse to provide reasonable accommodations to the known *disabilities*, or *pregnancy-related conditions*, of an employee."  N.Y. Exec. Law § 296(3)(a) (emphasis added); *see also* N.Y.C. BAR, *supra*, at 1–2 (explaining that the NYS PWFA "does not create a new legal framework governing pregnant employees; rather, it simply includes pregnancy-related conditions as conditions for which reasonable accommodations must be made").

Controlling Second Circuit case law governs the standard for evaluating such NYSHRL accommodation claims.  That standard mirrors the standard for accommodation claims under the ADA.  *See, e.g.*, *Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 184 n.3 (2d Cir. 2006) ("[A] New York State Human Rights Law [claim] . . . is governed by the same legal standards as govern federal ADA claims."); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 n.1 (2d Cir. 2000) ("[T]he analysis under the [NYSHRL] parallels that used in the ADA context."); *see also Lawtone-Bowles v. City of New York*, No. 17-cv-8024, 2019 WL 652593, at *6 (S.D.N.Y. Feb. 15, 2019) ("Courts apply the same standard for failure to accommodate cases under the ADA, Rehabilitation Act, NYSHRL, and NYCHRL.").  Thus, while this Court was correct that "[t]he Second Circuit 'typically treat[s] Title VII and [NYSHRL] *discrimination* claims as analytically identical," Dkt. 43, at 6 (quoting *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 n.7 (2d Cir. 2019)) (emphasis added), the standard for NYSHRL *accommodation* claims follows the ADA, not Title VII.[4]

---

[4] A potential source of confusion regarding the distinction between these claims is that the NYSHRL refers to both lesser treatment because of pregnancy (N.Y. Exec. Law § 296(1)(a)) and failure to accommodate pregnancy (N.Y. Exec. Law § 296(3)(a)) as different types of "unlawful discriminatory practices."  As a result, technically-speaking, a failure to accommodate claim can accurately be described as a sub-type of discrimination claim.  *See, e.g.*, *Nieblas-Love v. New York City Housing Auth.*, 165 F. Supp. 3d 51, 73 (S.D.N.Y. 2016) ("'[D]iscrimination' *includes* a failure to provide an employee with a reasonable accommodation.") (emphasis added); *Lanza*,

To plead a NYSHRL *prima facie* "discrimination case based upon a failure to accommodate, a plaintiff must establish that: (1) plaintiff is a person with a disability [or pregnancy-related condition]" within the meaning of the statute; (2) "an employer covered by the statute had notice" of her condition; (3) "with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Tafolla v. Heilig*, 80 F. 4th 111, 118 (2d Cir. 2023) (internal quotation mark omitted); *see also McMillan v. City of New York*, 711 F.3d 120, 125–26 (2d Cir. 2013) (same standard); *Graves*, 457 F.3d at 184 (same standard); *Rodal v. Anesthesia Grp. Of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004) (same standard); *Lin v. Amazon.com, Inc.*, No. 21-cv-6203 (KAM) (MMH), 2023 WL 5720063, at *4 (E.D.N.Y. Sept. 5, 2023) (same standard, in the context of pregnancy).

This Court erred in failing to apply this binding legal standard to Ms. Bethea's claims. Dkt. 43, at 6 (applying Title VII's discrimination standard and requiring Ms. Bethea to allege that her employer "did accommodate others similar in their ability or inability to work"). As described above, the correct standard to make out a NYSHRL accommodation *prima facie* case does not require a plaintiff to allege that her employer "accommodate[d] others," or even that her employer "discriminated against her based on her pregnancy." Dkt. 43, at 7. Rather, it is the failure to accommodate itself that violates the statute. *See, e.g.*, *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 135–36 (2d Cir. 2008); *Lanza*, 2023 N.Y. Misc. Lexis 97, at *3–4.

---

2023 N.Y. Misc. Lexis 97, at *4 ("[The NYSHRL and NYCHRL] instruct that a plaintiff may establish a pregnancy *discrimination* claim by pointing to reasonable accommodations that the employer denied.") (emphasis added). For the purposes of this brief, however, *amici* use the term "discrimination claim" as shorthand for a traditional discrimination claim arising out of an adverse action in violation of N.Y. Exec. Law § 296(1)(a); *amici* use "accommodation claim" as shorthand for a discrimination claim arising out of an employer's failure to comply with its affirmative statutory accommodation obligation, in violation of N.Y. Exec. Law § 296(3).

Applying the correct standard here, Ms. Bethea has alleged each element of her *prima facie* case. Specifically, she pleaded that (1) she was pregnant, Dkt. 1., ¶ 15; (2) her employer had notice of her pregnancy, *id.*, ¶¶ 15, 25; (3) she required reasonable accommodations to safely perform her job, *id.*, ¶¶ 15, 18, 22–24; and (4) her employer refused to make such accommodations, *id.*, ¶¶ 16, 21, 36–37. Accordingly, the Court should revise its order and permit Ms. Bethea to proceed with her adequately-pleaded Count II.

### III. The NYCHRL does not require a plaintiff to allege differential treatment because of pregnancy.

This Court erred in requiring Ms. Bethea to allege, for the purposes of her NYCHRL claim, "facts alleging differential treatment because of pregnancy." Dkt. 43, at 7–8. Like the NYSHRL, the NYCHRL affirmatively requires employers to provide reasonable accommodations to pregnant workers. As amended by the NYC PWFA, the NYCHRL makes it unlawful "for an employer to refuse to provide a reasonable accommodation . . . to the needs of an employee for the employee's pregnancy, childbirth, or related medical condition." N.Y.C. Admin. Code § 8-107(22)(a). This is so "regardless of whether and to what degree other employees are accommodated." N.Y.C. COMM'N HUMAN RIGHTS, LEGAL ENFORCEMENT GUIDANCE 7 (July 2021), https://www.nyc.gov/assets/cchr/downloads/pdf/publications/Pregnancy_InterpretiveGuide_2021.pdf.

#### A. The New York City Council amended the NYCHRL to ensure that pregnant workers enjoy an affirmative right to reasonable accommodation, regardless of how other employees are treated.

In 2013, the New York City Council amended the NYCHRL to require affirmative accommodation of pregnancy, absent undue hardship to the employer. Int. 974-A (N.Y.C.

2013), https://legistar.council.nyc.gov/LegislationDetail.aspx?ID=1241612&GUID=505FEA48-8362-46CB-88CF-A1BDE9B9084E.  The Council did so because workers' attempts to use existing federal laws to obtain pregnancy accommodations "have largely been unsuccessful"; the Council sought, through passage of the NYC PWFA, "to address this problem by mandating the provision of reasonable accommodations to pregnant women in the workplace if they so request."  Comm. Rep. Gov't Affairs Div., N.Y.C. Council Comm. on Civil Rights 3, 5 (June 25, 2013).

As a result of the NYC PWFA, "[t]he NYCHRL is more protective than the federal Pregnancy Discrimination Act of [Title VII] and requires employers to make reasonable accommodations for pregnancy, childbirth, or related medical conditions regardless of whether and to what degree other employees are accommodated."  N.Y.C. COMM'N HUMAN RIGHTS, *supra*, at 7.

### B. The legal standard for NYCHRL accommodation claims requires a plaintiff to allege only that she requested an accommodation and her request was denied.

This Court was correct in stating that, to allege a traditional *discrimination* claim under the NYCHRL, a plaintiff must plead some facts suggesting differential treatment because of pregnancy.  Dkt. 43, at 7–8.  A NYCHRL claim rooted in failure to accommodate, though, looks different.  A plaintiff need only plead: (1) "her employer was aware of her pregnancy"; (2) she made "a request for a reasonable accommodation to allow her to continue working during her pregnancy"; and (3) her reasonable accommodation request was denied.  *Xiang v. Eagle Enters., LLC*, No. 19-cv-1752 (PAE), 2020 WL 248941, at *7 (S.D.N.Y. Jan. 16, 2020); *see also* N.Y.C. COMM'N HUMAN RIGHTS, *supra*, at 7 (stating the same standard); *Lanza*, 2023 N.Y. Misc. Lexis 97, at *3–4 (concluding that the plaintiff "pleaded a cognizable cause of action" under the

NYCHRL by "making allegations related to an accommodation she requested but was ultimately denied"—without needing to "bring forward similarly situated employees with which to compare their treatment"); *Singhal v. Doughnut Plant, Inc.*, No. 20-cv-3295 (ALC), 2022 WL 976885, at *6 (S.D.N.Y. Mar. 31, 2022) (concluding that the plaintiff sufficiently "stated a claim for failure to provide a reasonable accommodation under the [NYCHRL]" when she alleged, merely, "denial of a reasonable accommodation to facilitate her childbirth"—without needing to allege any differential treatment); *Coronado*, 114 N.Y.S.3d at 198–200 (analyzing plaintiff's pregnancy *discrimination* claims separately from her pregnancy *accommodation* claims, and concluding that plaintiff adequately stated a NYCHRL failure-to-accommodate-pregnancy claim).

Applying the correct standard here, the Court has already found that Ms. Bethea pleaded each element of her *prima facie* accommodation case. *See* Dkt. 43, at 6–7 ("Here, Bethea has adequately alleged that (1) she was pregnant at the time of the relevant events; (2) she sought an accommodation for her pregnancy in the form of a transfer out of the mental health shelter; and (3) Winfield did not accommodate her request."). No more is required at this stage, and the Court should permit Count III to proceed.

**CONCLUSION**

For the reasons explained above, the Court clearly erred and overlooked binding Second Circuit case law in applying the incorrect legal standard to the NYSHRL and NYCHRL claims alleging unlawful failure to accommodate. *Amici* respectfully urge the Court to apply the correct, controlling Second Circuit legal standard to Ms. Bethea's claims, and allow Counts II and III to proceed.

Dated: January 4, 2024
      New York, NY

Respectfully submitted,

/s/ Dana Bolger
_____

Dana Bolger (dbolger@abetterbalance.org)
Katherine Greenberg (kgreenberg@abetterbalance.org)
A BETTER BALANCE
250 West 55th Street, 17th Floor
New York, NY 10019
Phone: (516) 614-3255
Fax: (212) 350-9700
*Counsel for Proposed Amici Curiae*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on January 4, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the Southern District of New York by CM/ECF.  All participants in the case are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

Dated: January 4, 2024                      /s/ Dana Bolger
                                                         Dana Bolger